BARBARA R. BURNS *v.* QUINNIPIAC UNIVERSITY
(AC 30833)

Harper, Alvord and Mihalakos, Js.

312

Argued December 2, 2009—officially released April 6, 2010

*Barbara R. Burns*, pro se, the appellant (plaintiff).

*Sean M. Nourie*, with whom, on the brief, was *Matthew G. Conway*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Barbara R. Burns, appeals pro se from the judgment of the trial court, rendered after a trial to the court, in favor of the defendant, Quinnipiac University (university). The plaintiff claims that the court (1) was biased and incapable of adjudicating her claims, (2) improperly applied Connecticut law rather than Minnesota law in resolving her claims, (3) improperly determined that good standing certification encompassed financial good standing in addition to academic good standing, (4) improperly determined that she was not in financial good standing and (5) rendered a judgment that violates public policy. We affirm the judgment of the trial court.

The plaintiff, who has resided in New Jersey and in Minnesota during the relevant time period, attended the university as a law student from January 4, 1999, to approximately July 1, 2000. At various times during that period, the plaintiff requested that the university issue certificates of good standing to certain designated institutions, including the University of Minnesota Law School, in order for her to enroll and to take courses as a visiting student for transfer credits and, subsequently, to submit with her applications to transfer to another law school. In the fall of 1999, the bursar's records indicated that the plaintiff had an unpaid tuition balance. The university took the position that the plaintiff would not be entitled to good standing certification

unless she had the requisite grade point average, had no disciplinary actions taken against her and was current in her financial obligations with respect to her tuition payments.[1] The plaintiff maintained that the law school's student handbook defined good standing only in terms of academics and that, if the university properly had applied her financial aid, she also would have been in financial good standing.

By letter dated May 12, 2000, David S. King, associate dean, advised the plaintiff that she owed the university $11,810 and that, consequently, the law school no longer would issue her transcripts or letters of good standing until the outstanding balance had been paid. Further, the plaintiff was unable to register for additional courses at the university. In a letter dated May 24, 2000, King informed Dean Thomas Sullivan of the University of Minnesota Law School that the plaintiff no longer was in good standing and that the university no longer would accept transfer credits on her behalf.

In May, 2002, the plaintiff filed a federal diversity action against King, claiming that his May 24, 2000 letter contained defamatory statements. The case proceeded to trial before a jury in January, 2005. At the close of the plaintiff's case-in-chief, the defendant's counsel moved for judgment as a matter of law. The United States District Court for the District of Connecticut granted the motion, concluding, inter alia, that (1) the plaintiff failed to present any credible evidence upon which a jury reasonably could premise a finding that King's statement regarding her lack of good standing was false in light of the uncontroverted evidence that her university account reflected unpaid bills of more than $11,000 and (2) financial delinquency was a ground

---

[1] The university never disputed the fact that the plaintiff was in good standing academically and that she never had been charged with behavioral misconduct.

for denial of the issuance of a certificate of good standing. The United States Court of Appeals for the Second Circuit affirmed the judgment of the District Court in a summary order filed December 23, 2005.[2]

On May 11, 2006, the plaintiff filed the present action. In her operative six count complaint dated February 23, 2007, the plaintiff alleged breach of contract, promissory estoppel, negligence, fraud, intentional infliction of emotional distress and defamation. During a six day trial, the self-represented plaintiff questioned witnesses, testified on her own behalf and submitted more than ninety exhibits. Her posttrial brief was sixty-four pages in length, and her reply brief was seventy pages in length.

In its memorandum of decision filed January 22, 2009, the court made the following findings: (1) good standing, for certification of academic status and for transfer purposes, includes three components—academic, behavioral and financial; (2) the plaintiff was not in good financial standing at all times during this controversy; (3) there was no credible evidence that the university breached any specific promise to the plaintiff with respect to the handling of her financial aid; (4) any claims that oral promises to facilitate transfer applications were made to the plaintiff were not credible; (5) the plaintiff failed to prove that the university was negligent or that it breached any duty owed to the plaintiff; (6) the plaintiff failed to prove that representatives of the university made any false representations to her or to any third party; (7) the plaintiff failed to prove any of the factual elements that support a claim for intentional infliction of emotional distress; and (8) the plaintiff's claim of defamation was time barred and,

[2] In the summary order, the court noted: "Plaintiff's conclusory allegations that the presiding District Judge was 'biased and unfit to sit,' Appellant's Br. at 24, are unsupported by the record."

in any event, had no merit. Accordingly, the court rendered judgment in favor of the defendant on all counts. This appeal followed.

I

The plaintiff's first claim involves an accusation that the court improperly exhibited bias against her at trial and was incapable of adjudicating her claims. Specifically, the plaintiff argues that "certain of the trial court's rulings and dicta connote bias" and that the trial judge made a statement that indicated he was incapable of understanding the plaintiff's claims.[3]

The plaintiff did not raise a claim of judicial bias at any time during the course of the trial. She could have requested that the judge recuse himself. "Claims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived. . . . A party's failure to raise a claim of disqualification at trial has been characterized as the functional equivalent of consenting to the judge's presence at trial." (Citation omitted; internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000).

Instead, the plaintiff waited until after the court rendered its judgment. "Our Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Internal quotation marks omitted.) Id., 693.

---

[3] The trial judge stated: "I can't make heads nor tails out of those numbers."

Nevertheless, we will address the plaintiff's claim given the grave nature of her accusation. "Because an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary . . . we . . . have reviewed unpreserved claims of judicial bias under the plain error doctrine. . . . Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Doody* v. *Doody*, 99 Conn. App. 512, 523, 914 A.2d 1058 (2007).[4]

The plaintiff argues that the court's bias against her was demonstrated by a number of rulings that were in favor of the university.[5] "[A]dverse rulings do not themselves constitute evidence of bias. . . . Obviously, if a ruling against a party could be used as an indicia of bias, at least half of the time, every court would be guilty of being biased against one of two parties. Moreover, the fact that a trial court rules adversely to a litigant, even if some of these rulings were determined on appeal to have been erroneous, [still] does not demonstrate personal bias." (Internal quotation marks omitted.) *Massey* v. *Branford*, 118 Conn. App. 491, 502, 985 A.2d 335 (2009). The fact that the plaintiff strongly disagrees with the substance of the court's rulings does not make those rulings evidence of bias. In the present case, the plaintiff's argument of bias is completely unsubstantiated by the trial record.

[4] Although the plaintiff does not use the term "plain error review" until her reply brief, we are satisfied that the substance of her claim for review of this issue in her principal brief falls under the plain error doctrine. See Practice Book § 60-5.

[5] The plaintiff also claimed that certain statements of the court constituted a "gratuitous ad hominem attack" on her. We carefully have reviewed those statements and conclude that this claim of the plaintiff is totally without merit and unworthy of any further discussion.

The plaintiff also argues that the statement of the trial judge that he was unable to make sense of the figures contained in a proffered exhibit demonstrated that he was incapable of understanding the plaintiff's claims at trial.[6] The statement quoted by the plaintiff was taken out of context and does not support the plaintiff's argument. Shortly after the challenged statement was made, the court addressed the plaintiff as follows: "You just left a package of about seventy exhibits untouched and unexplained. Now, with a witness sitting on the [witness] stand who isn't being asked any questions, you keep firing documents up at me saying this means this and this means that, and you're not under oath and you're not subject to cross-examination." We therefore conclude that the plaintiff's claim is a groundless assault on the integrity of the trial court.

II

The plaintiff's next claim is that the court improperly applied Connecticut law rather than Minnesota law in resolving her claims. She argues that the educational contract between the plaintiff and the university was formed in Minnesota, that the university's alleged defamatory statements were published to third parties in Minnesota and that the plaintiff's damages occurred in Minnesota.

The court's memorandum of decision does not address the conflict of laws issue raised by the plaintiff. Many of the plaintiff's claims summarily were rejected by the court, without citation to any statutory or case

---

[6] The plaintiff's additional arguments challenging the ability of the court to understand her claims all involve information that is not a part of the record on appeal. A reviewing court cannot go beyond the proper record before it in the determination of issues presented on appeal. *Grunschlag* v. *Ethel Walker School, Inc.*, 189 Conn. 316, 320, 455 A.2d 1332 (1983); *State* v. *Hickey*, 23 Conn. App. 712, 717 n.2, 584 A.2d 473, cert. denied, 217 Conn. 809, 585 A.2d 1233, cert. denied, 501 U.S. 1252, 111 S. Ct. 2894, 115 L. Ed. 2d 1058 (1991).

law, on the ground that she failed to present sufficient evidence to support them or on the ground that she was not credible. In discussing each cause of action alleged in the complaint, the court only occasionally cited a Connecticut case or a Connecticut statute.[7] Even if we assume that the court applied Connecticut law to certain of her claims, the decision is nevertheless devoid of any analysis as to the reasons for applying Connecticut law rather than Minnesota law. The court's decision does not provide the necessary factual and legal conclusions to permit a proper review of a choice of law issue.[8]

The plaintiff failed to seek an articulation with respect to the court's resolution of her choice of law argument. "An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . It is the responsibility of the appellant to provide an adequate record for review as provided in [Practice Book §] 61-10." (Internal quotation marks omitted.) *Hannon* v. *Redler*, 117 Conn. App. 403, 412, 979 A.2d 558 (2009). The failure to seek an articulation precludes a meaningful review of her claim.

Even if we assume that such a review is possible on the present record, the plaintiff's claim fails because

[7] In reviewing the plaintiff's defamation claim, the court stated that it was time barred under both Connecticut and Minnesota law.

[8] Even though choice of law issues present questions of law over which our review is plenary; *American States Ins. Co.* v. *Allstate Ins. Co.*, 282 Conn. 454, 461, 922 A.2d 1043 (2007); the analysis of the relevant factors must be considered in the context of the facts of the particular case. See *Dugan* v. *Mobile Medical Testing Services, Inc.*, 265 Conn. 791, 803, 830 A.2d 752 (2003). The court did not provide factual findings for a choice of law analysis.

Although the plaintiff provides a list of "undisputed facts" in the appendix to her principal appellate brief, the university never conceded that those alleged facts were undisputed. "A fact is not admitted or undisputed merely because it has not been contradicted." *Travis* v. *St. John*, 176 Conn. 69, 70, 404 A.2d 885 (1978).

she failed to indicate at trial or in her principal brief[9] to this court how the application of Minnesota law would have resulted in a different outcome. "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." (Internal quotation marks omitted.) *Chien* v. *Skystar Bio Pharmaceutical Co.*, 623 F. Sup. 2d 255, 262 n.6 (D. Conn. 2009); *Brown* v. *Strum*, 350 F. Sup. 2d 346, 348 (D. Conn. 2004). The plaintiff did not demonstrate that there was an outcome determinative conflict between the applicable laws of Connecticut and Minnesota, and, accordingly, the trial court cannot be faulted for its failure to perform a choice of law analysis.

## III

The plaintiff next claims that the court improperly determined that good standing certification encompassed financial good standing in addition to academic good standing. Specifically, the plaintiff argues that the requirements for good standing status are contained in the university's student services handbook (handbook) and that the handbook governs all matters pertaining to the law school and its students. We disagree.

"[T]he basic legal relation between a student and a private university or college is contractual in nature.

---

[9] In its appellate brief, the university argued that the plaintiff's claim was not reviewable because she failed to provide the requisite analysis for the trial court or for this court in her principal brief. The plaintiff then proceeded to discuss in her reply brief the reasons for her belief that the outcome would have been different if the trial court had applied Minnesota law to her claims. "Claims . . . are unreviewable when raised for the first time in a reply brief." (Internal quotation marks omitted.) *Day* v. *Gabriele*, 101 Conn. App. 335, 341 n.5, 921 A.2d 692, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007).

. . . [T]here seems to be no dissent from [the] proposition that the catalogues, bulletins, circulars, and regulations of the institution determine the contractual relationship between the student and the educational institution. . . . [A] court that is asked to enforce an asserted contract between a student and his university must examine the oral and written expressions of the parties in light of the policies and customs of the particular institution. . . . Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises, consistent with the limitations expressed in *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 687 A.2d 111 (1996),[10] appears sound." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Schmitz*, 119 F. Sup. 2d 90, 93 (D. Conn. 2000).

In correspondence to the plaintiff dated October 4, 1999, the university's director of financial aid enclosed a financial aid award letter and an eight page document entitled "Policies and Procedures Concerning Financial Aid Awards" (financial aid policy). The court found that the plaintiff received and signed for the financial aid policy. In bold print, on the last page of that policy, is the following statement: "Any student who owes a balance to the Law School will not be issued a transcript and will not be allowed to register for the subsequent semester. In addition, no certification will be forwarded

---

[10] In *Gupta*, our Supreme Court rejected the viability of a cause of action for breach of contract challenging the overall quality of educational programs. *Gupta* v. *New Britain General Hospital*, supra, 239 Conn. 591–92. "To limit judicial intrusion into educational decision making, the student must . . . allege nonperformance of a special promise, a promise outside the purview of normal educational expectations." *Faigel* v. *Fairfield University*, 75 Conn. App. 37, 38, 815 A.2d 140 (2003).

to any external organizations, including the Bar Admissions Boards, that degree requirements have been completed." In addition to those exhibits, there was testimony by the dean, the associate dean, the secretary to the registrar and the associate dean, the registrar and the bursar that a student had to be in financial good standing in order to register for classes, have transcripts issued, be given permission to take summer courses at another law school for transfer credits or receive good standing certification.

Interpretation of the written terms of a contract and the degree of compliance by the parties are questions of fact to be determined by the trier of fact. *Craine* v. *Trinity College*, 259 Conn. 625, 655–56, 791 A.2d 518 (2002). In this case, the educational contract encompassed, inter alia, the handbook and the financial aid policy. The court, as fact finder, determined that a student was required to be in financial good standing in order to be entitled to good standing certification. Because the plaintiff is challenging factual findings, we review those findings under the clearly erroneous standard of review.[11] Because the record amply supports the findings of the court, we cannot conclude that they were clearly erroneous.

## IV

The plaintiff next claims that the court improperly found that she was not in financial good standing. She argues that the university mishandled her financial aid, and, consequently, the bursar's records erroneously reflected an unpaid tuition balance of $11,810.

The court found that "[t]here was no credible evidence that anyone connected to the [university] breached any specific promise to the plaintiff in connection with the handling of the plaintiff's financial aid.

---

[11] "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm

The evidence established that any change in the processing of the financial aid was at the express direction of the plaintiff." The court was free to consider whatever testimony it found credible and to rely on any exhibits admitted as evidence. The plaintiff's argument is nothing more than an attempt to retry the facts. "We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008). The court's finding that the plaintiff was not in financial good standing at all times during this controversy was not clearly erroneous.[12]

V

The plaintiff's final claim is that the court rendered a judgment that violates public policy. Without any citation to statutory authority or case law, the plaintiff's argument, contained in one and one-half pages of her brief, appears to be that appellate courts must not focus on an individual case but, rather, "[craft] a rule of law that will do justice in the generality of cases."

This claim is inadequately briefed, and we decline to review it. "Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Bicio* v. *Brewer*, 92 Conn. App. 158, 172, 884 A.2d 12 (2005).

The judgment is affirmed.

In this opinion the other judges concurred.

conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Porter* v. *Morrill*, 108 Conn. App. 652, 664, 949 A.2d 526, cert. denied, 289 Conn. 921, 958 A.2d 152 (2008).

[12] In her brief, the plaintiff has interspersed several claims that the court admitted testimony and documents that contained hearsay and double hearsay statements. There is no analysis of these claims, however, and she has failed to provide references to the transcripts. "We are not required to review issues that have been improperly presented to this court through an

inadequate brief." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007).