******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE BANK OF NEW YORK MELLON, SUCCESSOR TRUSTEE *v.* WADE H. HORSEY II ET AL.
## (AC 39665)

Prescott, Elgo and Bright, Js.

*Syllabus*

The plaintiff bank, B Co., sought to foreclose a mortgage on certain real property owned by the defendant H. In its complaint, B Co. alleged, inter alia, that it was the holder of the subject note and mortgage and that the note was in default for nonpayment. After B Co. filed a motion for a judgment of strict foreclosure, it assigned the mortgage to T Co., which subsequently was substituted as the plaintiff. Thereafter, H filed a motion pursuant to the relevant rule of practice (§ 14-3) requesting the court to render a judgment of dismissal on the ground that T Co. had failed to prosecute the action with reasonable diligence. The trial court issued an order denying H's motion but directing T Co. to take some action to advance the case within sixty days. The court also indicated that if T Co. failed to comply, the court would entertain a renewed motion to dismiss. Approximately seven months later, T Co. filed a motion for summary judgment as to liability only and submitted copies of the note, mortgage and assignments, and an affidavit from its loan servicing agent. H filed an objection to the motion but did not attach an affidavit or any other evidence that disputed factually T Co.'s submissions. H also filed a motion renewing his request for a judgment of dismissal pursuant to § 14-3, noting that T Co. had not filed its motion for summary judgment within the sixty day time period established by the court's order. Following a hearing, the trial court denied H's motion to dismiss without comment and granted T Co.'s motion for summary judgment as to liability, finding that no genuine issue of material fact existed as to H's liability on the note and mortgage. Thereafter, the parties appeared before the court on the dormancy docket to address the status of the case, and, after hearing from counsel on the matter, the court dismissed the action. T Co. subsequently filed a motion to open the judgment of dismissal, arguing that it had filed and reclaimed a motion for a judgment of strict foreclosure prior to the court's dismissal and that it had in its possession all documents necessary to proceed to a final judgment, including an updated appraisal and affidavit of debt, which were later filed with the court. The court summarily granted the motion to open and, on the basis of its review of the documents submitted by T Co., rendered a judgment of strict foreclosure. On H's appeal to this court, *held*:

1. H could not prevail on his claim that the trial court improperly granted T Co.'s motion to open the disciplinary judgment of dismissal: there was nothing in the record to support H's assertion that the court disregarded the standard for opening a disciplinary judgment set forth in the applicable statute (§ 52-212) and rule of practice (§ 17-43), which require, inter alia, a showing that the plaintiff was prevented by mistake, accident or other reasonable cause from prosecuting the action, and H failed to demonstrate that the court abused its discretion in granting the motion, as the record indicated that T Co. timely moved to open the judgment of dismissal on the ground that any delay in proceeding to a final judgment was not the result of lack of diligence on its part but, instead, was caused by a delay in receiving certain original documents necessary to foreclose, which was outside of its direct control, that H did not dispute the veracity of T Co.'s factual assertions, that no real argument existed that a good cause of action failed to exist at the time of the dismissal because the motion for summary judgment as to liability already had been granted, and that the court expressed skepticism that H had been unduly prejudiced by any delay in bringing the action to a final judgment; accordingly, on that record and in light of the well established policy that courts should favor bringing about a trial on the merits whenever possible, this court could not conclude that the trial court abused its considerable discretion in opening the judgment or that its implicit finding of reasonable cause to do so was clearly erroneous.

2. This court declined to review H's unpreserved claims that the trial court exhibited bias against him in ruling on the motion to open the judgment of dismissal and that the court improperly rendered a judgment of strict foreclosure because T Co. failed to comply with the five day notice provision of the relevant rule of practice (§ 23-18 [b]), as those claims were never raised before or decided by the trial court and, therefore, were not properly before this court on appeal.

3. The trial court properly granted T Co.'s motion for summary judgment as to liability, as there was no genuine issue of material fact precluding summary judgment; T Co. submitted sufficient evidence in support of its motion for summary judgment to establish its prima facie case of foreclosure, including copies of the note, mortgage and relevant assignments, and a sworn affidavit from its loan servicing agent averring that T Co. was the holder of the original note and mortgage, the note was in default for nonpayment, notice of the default was sent to H and H had not cured the default, and H failed to submit any competent or admissible evidence to counter T Co.'s evidentiary submissions and to demonstrate the existence of a genuine issue of material fact that precluded summary judgment as to liability.

4. This court declined to review H's claim that the trial court abused its discretion by not dismissing the foreclosure action pursuant to the relevant rule of practice (§ 17-19) for T Co.'s failure to comply with that court's order directing T Co. to advance the case within sixty days, that claim having been inadequately briefed; H's brief contained no citations to the record demonstrating that he requested the court to exercise its discretion pursuant to § 17-19 and legal analysis of the claim was essentially limited to a single sentence, and H did not provide any analysis or cite to any legal authority suggesting that the court was required to exercise its discretion under § 17-19 sua sponte.

5. This court declined to review H's claim that the trial court improperly failed to give credence to the bifurcation of the subject note and mortgage, as H failed to adequately brief this claim beyond his mere abstract legal assertion that the splitting of the note and mortgage created an immediate and fatal flaw in title; it was unclear from H's brief whether his claim challenged the summary judgment as to liability, the judgment of strict foreclosure or both, and the brief contained only bald citations to two out-of-state cases, without explanation as to how the cited case law was applicable to the specific facts of the present case, whether there was Connecticut authority on the question or why this court should adopt the reasoning of the cited cases.

6. H could not prevail on his claim that the trial court improperly failed to address whether T Co. had standing to prosecute the foreclosure action and that T Co., in fact, lacked standing: the record did not support H's assertion that the court failed to consider the issue of T Co.'s standing but, rather, indicated that the court implicitly determined that T Co. had standing and rejected H's argument to the contrary, and H did not seek an articulation of either the court's ruling on the motion for summary judgment or the judgment of strict foreclosure; moreover, neither of H's arguments on appeal implicated T Co.'s standing, and, on the basis of the record presented, this court concluded that H failed to rebut the presumption that T Co. had standing to prosecute this action as the holder of the note and mortgage.

7. This court summarily rejected H's claim that the trial court ignored fraud perpetrated by T Co., as that unsupported claim lacked merit; although H referenced instances of bank fraud associated with the recent mortgage crisis, he failed to cite to any evidence in the record indicating that that type of fraud occurred in the present case.

Argued January 30—officially released June 5, 2018

*Procedural History*

Action to foreclose a mortgage on certain real property of the named defendant et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where The Bank of New York Mellon, successor trustee, was substituted as the plaintiff; thereafter, the court, *Robaina, J.*, granted the substitute plaintiff's motion for summary judgment as to liability; subsequently, the court, *Noble, J.*, dismissed the action for

failure to prosecute with reasonable diligence; thereafter, the court, *Dubay, J.*, granted the substitute plaintiff's motion to open the judgment; subsequently, the court, *Dubay, J.*, granted the substitute plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court. *Affirmed.*

*Wade H. Horsey II*, self-represented, the appellant (named defendant).

*Marissa I. Delinks*, with whom, on the brief, was *Valerie N. Doble*, for the appellee (substitute plaintiff).

*Opinion*

PRESCOTT, J. The defendant, Wade H. Horsey II,[1] appeals from the judgment of strict foreclosure rendered in favor of the substitute plaintiff, The Bank of New York Mellon, as Successor Trustee for JPMorgan Chase Bank, N.A., as Trustee for Novastar Mortgage Funding Trust, Series 2005-2 Novastar Home Equity Loan Asset-Backed Certificates, Series 2005-2. The defendant claims on appeal that the trial court improperly (1) granted the substitute plaintiff's motion to open a disciplinary judgment of dismissal because it disregarded the standard set forth in General Statutes § 52-212 and Practice Book § 17-43; (2) exhibited bias against the defendant; (3) failed to ensure that the defendant timely received a preliminary statement of the substitute plaintiff's monetary claim in accordance with Practice Book § 23-18 (b); (4) rendered summary judgment as to the defendant's liability; (5) declined to dismiss the foreclosure action pursuant to Practice Book § 17-9; (6) failed to consider his argument that "bifurcation" of the note and mortgage had rendered them unenforceable; (7) failed to address the issue of the substitute plaintiff's standing to prosecute this action; and (8) failed to consider whether the substitute plaintiff had engaged in fraud upon the court. The defendant's claims either are unpreserved, inadequately briefed, or fail to persuade us that the court's actions constitute reversible error. Accordingly, we affirm the judgment of strict foreclosure and remand the case to the trial court for the purpose of setting new law days.

The record reveals the following relevant facts and procedural history. The original plaintiff, The Bank of New York Mellon, as Successor Trustee under Novastar Mortgage Funding Trust 2005-2, commenced this action in September, 2009. Its complaint contained two counts. Count one sought to foreclose on a mortgage that the defendant had executed in 2005 on property in Avon as security for a note in the principal amount of $390,000.[2] The original plaintiff alleged that it was the holder of the note and mortgage and that the note was in default for nonpayment. Count two sought reformation of the mortgage in order to correct a minor defect in the property description.

On April 23, 2010, the original plaintiff filed a motion for a judgment of strict foreclosure and a motion to default the defendant for failure to appear. Soon thereafter, it also filed an appraisal, an affidavit of debt, a foreclosure worksheet and other documents necessary to obtain a foreclosure judgment. The court clerk defaulted the defendant for failure to appear on May 3, 2010. On that same day, however, the defendant filed an appearance as a self-represented party along with a request to participate in the court-sponsored foreclosure mediation program. The default was set aside and the court granted the defendant's request for mediation.

See Practice Book § 17-20 (d) (default automatically set aside if defaulted party files appearance before judgment on default is rendered).

Foreclosure mediation began and continued through the end of 2010. Over the following year and a half, the parties filed a number of motions related to discovery. On September 26, 2012, the original plaintiff assigned the mortgage to the substitute plaintiff, which the court substituted into the action for the original plaintiff on November 19, 2012.

The defendant filed an answer to the complaint and a disclosure of defense on October 9, 2013. In his answer, the defendant admitted to executing the note and mortgage but denied the allegations that he was in default on the note or had been provided proper notice of default. The defendant did not assert any special defenses or raise any counterclaims. In his disclosure of defense, the defendant indicated that he reserved the right to dispute the amount of the debt.

No further activity in the action occurred until April 17, 2015, at which time the defendant filed a motion pursuant to Practice Book § 14-3 asking the court to render a judgment of dismissal on the ground that the substitute plaintiff had failed to prosecute the action with reasonable diligence. The court, *Vacchelli, J.*, issued an order on May 6, 2015, denying the defendant's motion, but directing the substitute plaintiff to move for summary judgment or to take some other action to advance the case within sixty days. The court indicated that, if the substitute plaintiff failed to comply, the court would entertain a renewed motion to dismiss.

The substitute plaintiff filed a motion for summary judgment as to liability only on December 21, 2015. Along with its motion, the substitute plaintiff submitted copies of the note, the mortgage and assignments, and an affidavit averring, inter alia, that the substitute plaintiff was the holder of the note and the mortgagee of record, the note was in default, notice of the default had been sent to the defendant, and the default had not been cured. The defendant filed an objection to the motion for summary judgment on February 29, 2016.[3] He did not attach an affidavit or any other evidence that disputed factually the summary judgment submissions of the substitute plaintiff.[4]

When the defendant filed his objection to the motion for summary judgment, he also filed a motion renewing his request for a judgment of dismissal pursuant to Practice Book § 14-3, noting that the substitute plaintiff had not filed its motion for summary judgment within the sixty day time period established by the court's May 6, 2015 order. The substitute plaintiff filed an objection to the motion to dismiss, arguing that dismissal was not an appropriate remedy at that juncture because the defendant had not established that he was prejudiced

by the delay and the parties were now "postured to litigate the matter in short order."

The court, *Robaina, J.*, heard argument on the motion for summary judgment on March 21, 2016. On April 14, 2016, the court issued orders, without comment, denying the defendant's renewed motion to dismiss for lack of diligence and overruling his objection to the motion for summary judgment. The court also issued the following order granting the motion for summary judgment as to liability only: "[I]t is hereby found that no genuine issue of material fact exists as to the defendants' liability on the note and mortgage. . . . Determination of the amount of indebtedness is deferred until such time as plaintiff seeks a judgment of foreclosure."

On April 19, 2016, the defendant filed an appeal from the court's April 14, 2016 orders granting the motion for summary judgment as to liability and denying his motion for a disciplinary dismissal of the action. The substitute plaintiff filed with this court a motion to dismiss that appeal for lack of a final judgment. The motion was granted on May 25, 2016. See *Wells Fargo Bank, N.A.* v. *Tarzia*, 150 Conn. App. 660, 662 n.2, 92 A.3d 983 (entry of summary judgment as to liability only not final judgment for purposes of appeal), cert. denied, 314 Conn. 905, 99 A.3d 635 (2014); *Deutsche Bank National Trust Co.* v. *Bialobrzeski*, 123 Conn. App. 791, 794 n.7, 3 A.3d 183 (2010) (denial of motion to dismiss generally not appealable final judgment). On July 20, 2016, the substitute plaintiff reclaimed for the short calendar list its April 23, 2010 motion seeking a judgment of strict foreclosure.

On August 1, 2016, the parties appeared before the court, *Noble, J.*, on the court's dormancy docket. The court had issued a notice to appear and show cause on March 18, 2016, prior to the hearing on the motion for summary judgment, directing the parties to appear to address the status of the case and indicating that "the court may dismiss this action at the hearing." The court first heard from counsel for the substitute plaintiff, who indicated that the substitute plaintiff was ready to proceed to judgment but was awaiting the return of the original note and other documents necessary to secure the judgment. According to counsel, at some point, the substitute plaintiff had hired another law firm to represent it in this action, and the original documents had been transferred to that firm. The matter subsequently was transferred back to counsel's firm, but, according to counsel, the original documents had not yet been received back. Without first hearing from the defendant, the court indicated that it would give the substitute plaintiff one more chance, but if the matter did not proceed to judgment by November 14, 2016, the substitute plaintiff would be nonsuited and the matter dismissed.

The defendant then asked the court if he could be

heard. The court apologized for not giving the defendant an opportunity to speak prior to ruling. The defendant brought to the court's attention that he previously had filed a motion to dismiss for lack of diligence and that the substitute plaintiff had failed to comply with the court's order directing the substitute plaintiff to take some action to advance the case within sixty days. The substitute plaintiff responded that the same argument had been raised to and rejected by the court as part of its consideration of the motion for summary judgment and renewed motion to dismiss. Nevertheless, after confirming that the case had been on the docket since 2009, the court reversed its earlier ruling and dismissed the action.

On August 31, 2016, the substitute plaintiff filed a motion to open and set aside the judgment of dismissal. It argued that it had filed and reclaimed a motion for a judgment of strict foreclosure prior to the court's dismissal and now had in its possession all documents necessary to proceed to a final judgment, including an updated appraisal and updated affidavit of debt. It also argued that "it would be an exercise in futility and would unduly burden the court's docket to require [it] to commence a new action." The substitute plaintiff filed the updated appraisal on September 6, 2016, and, on September 8, 2016, filed a new foreclosure worksheet, an updated affidavit of debt, and an affidavit regarding attorney's fees. The defendant filed an objection to the motion to open on September 6, 2016, in which he argued that the substitute plaintiff could not demonstrate that it was prevented from prosecuting the action by mistake, accident or other reasonable cause or that a good cause of action existed at the time of the judgment of dismissal.

Both the motion to open and the reclaimed motion for a judgment of strict foreclosure appeared on the court's September 12, 2016 foreclosure docket. The court, *Dubay, J.*, asked the defendant at the beginning of that hearing whether he was objecting to the motion to open or the motion for a judgment of strict foreclosure. The defendant replied: "I'm objecting to the motion to open because my understanding is without opening the judgment the court can't consider any other motion." The court acknowledged that the case had been pending for a long time but asked the defendant to explain how he had been prejudiced by that delay. The defendant answered that he had been under the strain of not knowing whether he would be able to remain in his home. The court suggested that, with respect to prejudice, the defendant actually benefitted from the delay because he was able to remain in his home for seven years without making mortgage payments. After some further discussion with the defendant, including about the nature of his defense to the foreclosure action, the court summarily granted the motion to open.

The court then immediately turned to consideration of the motion for a judgment of strict foreclosure. It began by confirming that summary judgment as to liability previously had been rendered in this case. The defendant then requested that the court grant a two month continuance to November 16, 2016, arguing that the substitute plaintiff had filed its updated financial information after the action had been dismissed and prior to it having been opened, and the defendant claimed that he needed additional time to prepare a defense. The court denied the request, explaining to the defendant that he had had seven years to prepare and, furthermore, that it intended to set law days to commence on November 28, 2016, and, thus, the defendant would have ample time to file a motion to open any judgment it rendered "based upon whatever reasons you think it . . . should be reopened for." Other than arguing that the substitute plaintiff's financial documents were filed too close in time to the hearing on the motion for a judgment of strict foreclosure, the defendant did not advance any reason why the court could not determine the amount of indebtedness on the basis of those documents. Because the defendant's liability already had been established, calculating the total net amount of the debt owed and establishing law days were the only outstanding issues for the court to resolve before it could render a judgment of strict foreclosure.[5]

The court, on the basis of its review of the documents submitted by the substitute plaintiff, including the revised affidavit of debt and updated appraisal, rendered a judgment of strict foreclosure, finding that the property had a fair market value of $390,000 and that the debt owed as of the judgment date was $644,382.77. The court also awarded attorney's fees, an appraisal fee, and a title search fee, and it set law days to commence on November 28, 2016. Finally, the court also rendered judgment for the substitute plaintiff, without objection, on count two of the complaint seeking reformation of the mortgage's property description. This appeal followed.

I

The defendant first claims that the court improperly granted the substitute plaintiff's motion to open the disciplinary judgment of dismissal. Specifically, the defendant argues that the court disregarded the standard for opening a judgment set forth in General Statutes § 52-212 and Practice Book § 17-43. The substitute plaintiff responds that the defendant's claim is not reviewable because the trial court did not state the factual or legal basis for its decision to grant the motion to open and the defendant never requested an articulation. Alternatively, the substitute plaintiff argues that, on the basis of the record and arguments presented, the trial court reasonably could have concluded that the criteria set forth in § 52-212 and Practice Book § 17-

43 for opening a judgment were met, and, therefore, the defendant has failed to demonstrate that the court abused its discretion. We agree with the substitute plaintiff that, on the basis of the record before us, the defendant has failed to demonstrate that the court abused its discretion in granting the motion to open the judgment of dismissal.

"If a party shall fail to prosecute an action with reasonable diligence, the judicial authority may, after hearing, on motion by any party to the action  . . .  or on its own motion, render a judgment dismissing the action with costs." Practice Book § 14-3 (a). "Practice Book § 14-3 reflects the judicial branch's interest in having counsel prosecute actions with reasonable diligence. Judges, faced with case flow management concerns, must enforce the pace of litigation coming before the court, rather than allowing the parties to do so.  . . .  Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system.  . . .  [Therefore], lengthy periods of inactivity by the plaintiff constitute sufficient grounds for a trial court to determine that the plaintiff has failed to prosecute an action with reasonable diligence." (Citations omitted; internal quotation marks omitted.) *Brochu* v. *Aesys Technologies*, 159 Conn. App. 584, 593, 123 A.3d 1236 (2015).

"Courts must remain mindful, however, that [i]t is the policy of the law to bring about a trial on the merits of a dispute whenever possible  . . .  and that [o]ur practice does not favor the termination of proceedings without a determination of the merits of the controversy [if] that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted) Id., 594. Disciplinary dismissals pursuant to Practice Book § 14-3, thus, are not favored and, accordingly, may be set aside and the action reinstated to the docket upon the granting of a motion to open filed in accordance with Practice Book § 17-43 and § 52-212.

Practice Book § 17-43 provides in relevant part that the disciplinary dismissal of an action may be set aside within four months "upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action in whole or in part existed at the time of the rendition of such judgment  . . .  and that the plaintiff  . . .  was prevented by mistake, accident or other reasonable cause from prosecuting" the action. Section 52-212 contains nearly identical language. "A motion to open  . . .  is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 711, 850 A.2d 1118 (2004).

In the present case, the court granted without comment the substitute plaintiff's motion to open the disci-

plinary judgment of dismissal. The defendant did not request an articulation of that decision. It is the appellant's burden to provide this court with an adequate record for review of all claims raised on appeal. Practice Book § 61-10 (a). In a situation in which the court has not set forth the factual and legal basis for a discretionary ruling, and the appellant has failed to seek an articulation in accordance with Practice Book § 66-5, we must presume that the court acted correctly and can only conclude that there has been an abuse of discretion if such abuse is apparent on the face of the record before us. See *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 132, 74 A.3d 1225 (2013) ("The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." [Internal quotation marks omitted.]). We cannot reach such a conclusion in the present case.

Pursuant to statute and our rules of practice, in order to justify the opening of a judgment rendered for failure to prosecute an action with reasonable diligence, the court must be satisfied only that there has been some "mistake, accident *or other reasonable cause*" that justifies setting aside the judgment. (Emphasis added.) General Statutes § 52-212; Practice Book § 17-43. There is nothing in the record to support the defendant's assertion that the court failed to apply that standard. Moreover, we cannot conclude that the court abused its discretion in granting the motion to open under the circumstances. The substitute plaintiff timely moved to open the disciplinary dismissal well within the requisite four month period. It argued to the court that any delay in proceeding to a final judgment was not the result of lack of diligence on the part of the substitute plaintiff but, rather, was caused by a delay in receiving original documents necessary to foreclose, a delay that was outside of its direct control. The defendant did not dispute the veracity of the substitute plaintiff's factual assertions. Furthermore, because summary judgment as to liability already had been rendered prior to the court's dismissal, no real argument existed that a good cause of action failed to exist in whole or in part at the time of the dismissal. Finally, the court expressed skepticism that the defendant had been unduly prejudiced by any delay in bringing the action to a final judgment. We cannot conclude on this record that the court abused its considerable discretion in opening the judgment of dismissal or that its implicit finding of reasonable cause to do so was clearly erroneous, particularly in light of the well established policy that courts should favor bringing about a trial on the merits whenever possible. Accordingly, we reject the defendant's claim.

II

The defendant next claims that the court exhibited

bias against him in ruling on the motion to open the judgment of dismissal. Specifically, he maintains that the court displayed bias by questioning him about how he was prejudiced by the substitute plaintiff's delay in prosecuting the action, seeming to presume that judgment inevitably would be rendered against him. The substitute plaintiff argues that this claim is not reviewable because no claim of judicial bias was ever brought to the attention of the trial court. We agree with the substitute plaintiff.

In order to preserve a claim for appellate review, it generally must have been distinctly raised to and decided by the trial court. See Practice Book § 60-5; *Connecticut Bank & Trust Co.* v. *Munsill-Borden Mansion, LLC*, 147 Conn. App. 30, 36–37, 81 A.3d 266 (2013). This rule applies equally to claims of judicial bias. See *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 316, 991 A.2d 666 (claims alleging judicial bias should be raised at trial or claim will be deemed waived), cert. denied, 297 Conn. 906, 995 A.2d 634 (2010). Although the defendant was not required in this case to file a written motion to disqualify pursuant to Practice Book § 1-23 because the circumstances giving rise to the defendant's claim had not arisen prior to the hearing; see *In re Messiah S.*, 138 Conn. App. 606, 625, 53 A.3d 224, cert. denied, 307 Conn. 935, 56 A.3d 712 (2012); the defendant nevertheless had a duty to assert seasonably his claim of alleged judicial bias to the court at the hearing on the basis of his perception of the events transpiring in court. See id. (respondent preserved claim of judicial bias by orally asking court during trial to recuse itself in response to court's comments and rulings). Here, the defendant never complained of judicial bias during the hearing, nor did he ask the court to disqualify itself. Because this claim is unpreserved, we decline to review it.[6]

### III

The defendant also claims that the court improperly rendered a judgment of strict foreclosure because the substitute plaintiff failed to comply with the five day notice provision of Practice Book § 23-18 (b). As with his claim of judicial bias, this claim is unpreserved because it was never raised or decided at the hearing on the motion for a judgment of strict foreclosure. Accordingly, we decline to review it.

As previously noted, Practice Book § 23-18 governs the proof required to establish the amount of indebtedness in a foreclosure action. Subsection (a) of § 23-18 "serve[s] as an exception to the general prohibition of hearsay evidence"; *Bank of America, N.A.* v. *Chainani*, 174 Conn. App. 476, 484, 166 A.3d 670 (2017); and provides: "In any action to foreclose a mortgage where no defense as to the amount of the mortgage debt is interposed, such debt may be proved by presenting to the judicial authority the original note and mortgage,

together with the affidavit of the plaintiff or other person familiar with the indebtedness, stating what amount, including interest to the date of the hearing, is due, and that there is no setoff or counterclaim thereto." Subsection (b) of § 23-18 provides in relevant part: "No less than five days before the hearing on the motion for judgment of foreclosure, the plaintiff shall file with the clerk of the court and serve on each appearing party . . . a preliminary statement of the plaintiff's monetary claim." This obligation ordinarily is satisfied by the filing of an affidavit of debt.

The original plaintiff filed an affidavit of debt in this matter on April 28, 2010, shortly after filing the motion for a judgment of strict foreclosure, which was later reclaimed by the substitute plaintiff. Accordingly, some preliminary statement of the defendant's indebtedness was filed more than five days before the hearing on the motion for a judgment of foreclosure. Four days before the hearing on the motion, the substitute plaintiff also filed and served an updated affidavit of debt. The defendant, in requesting a continuance of the motion, raised to the court that the substitute plaintiff had filed the updated affidavit of debt and other paperwork only a few days prior to the hearing. The defendant, however, never made any reference to Practice Book § 23-18 or a five day notice period, nor did he argue that the updated affidavit of debt or other submissions were inadmissible as evidence of the amount of indebtedness because they were not timely filed. Because those issues were not raised distinctly before the trial court, they are not properly before this court on appeal. Accordingly, we do not decide whether Practice Book § 23-18 was satisfied by the filing of the initial affidavit of debt or whether the five day notice requirement is mandatory or subject to waiver at the discretion of the parties or the court.[7]

IV

The defendant next claims that the court improperly granted the substitute plaintiff's motion for summary judgment as to liability. The substitute plaintiff responds that the defendant failed to present any competent or admissible evidence to rebut its right to enforce the note and to foreclose the mortgage and failed to demonstrate the existence of any disputed issue of fact or law that would have barred summary judgment as to liability. We agree with the substitute plaintiff and, accordingly, reject the defendant's claim.

"Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 175, 73 A.3d 742 (2013). "[I]n seeking summary judgment, it is the movant who has the burden of showing . . . the absence of any genuine issue as to all the material facts [that], under applicable principles of substantive law, entitle him to a judgment as a matter of law." (Internal quotation marks omit-

ted) Id.

"In order to establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." (Citations omitted.) Id., 176.

A party opposing summary judgment "must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Emphasis omitted; internal quotation marks omitted.) *Little* v. *Yale University*, 92 Conn. App. 232, 234, 884 A.2d 427 (2005), cert denied, 276 Conn. 936, 891 A.2d 1 (2006). In other words, "[d]emonstrating a genuine issue of material fact requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . A material fact is one that will make a difference in the result of the case. . . . To establish the existence of a [dispute as to a] material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact . . . . The issue must be one which the party opposing the motion is entitled to litigate under [its] pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Citations omitted; internal quotation marks omitted.) *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 244–45, 659 A.2d 1226, cert. denied, 235 Conn 915, 665 A.2d 609 (1995).

At the hearing on the motion for summary judgment, the defendant described his argument in opposition to summary judgment as encompassing two issues: fraud and lack of standing. With respect to fraud, the defendant first asserted that he had been unable to refinance his loan because of what he described as an unfair prepayment penalty. Second, he asserted that the substitute plaintiff and its predecessors in interest utilized the London Interbank Offered Rate to set and adjust rates, despite knowing that it, according to the defendant, "had been determined to be a fraudulent index." With respect to standing, the defendant first asserted

his belief that errors had been made with respect to how the note and mortgage had been transferred and assigned and that so-called "robo-signers" may have been used to reconstruct documents. The defendant also asserted the "possibility of bifurcation," which the defendant described as the note and mortgage having been legally separated and rendered unenforceable. The various arguments made by the defendant to the court, however, were unsupported by reference to any evidentiary submissions included as part of the summary judgment record, nor did he offer other evidentiary proof or affidavits in support of his arguments at the hearing.

In support of its motion for summary judgment as to liability only, the substitute plaintiff's evidentiary submissions included copies of the note, the mortgage and relevant assignments. It also submitted a sworn affidavit from its loan servicing agent. The affidavit provided, inter alia, that the substitute plaintiff was the holder of the original note and the mortgagee of record, the note was in default for nonpayment, the defendant was provided notice of that default in accordance with the terms of the note and mortgage, and, as of that date, the defendant had not cured the default. This evidence, which was not countered by the defendant through his own evidentiary submission, was sufficient to establish the substitute plaintiff's prima facie case and there was no genuine issue of material fact precluding summary judgment as to liability. We conclude on the basis of our plenary review that the trial court properly rendered summary judgment as to liability only.

V

We next turn to the defendant's claim that the court abused its discretion by not dismissing the foreclosure action pursuant to Practice Book § 17-19. The substitute plaintiff argues that the defendant has failed to brief this claim adequately and that he failed to preserve the claim for review because he never expressly moved for dismissal of the action pursuant to Practice Book § 17-19. We agree that the claim, even if preserved, is inadequately briefed.

Practice Book § 17-19 provides: "If a party fails to comply with an order of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial, the party may be nonsuited or defaulted by the judicial authority." The defendant argues that the substitute plaintiff failed to comply with the court's May 6, 2015 order to advance the case within sixty days, instead filing its motion for summary judgment more than six months later. As the defendant acknowledges, however, he did not file a motion raising the substitute plaintiff's noncompliance until he objected to the motion for summary judgment. At that time, he renewed his request for a dismissal pursuant to Practice Book § 14-3 for lack of reasonable diligence. He did not, however, invoke Practice Book § 17-19.

The defendant's appellate brief contains no citations to the record demonstrating that he ever asked the court to exercise its discretion pursuant to Practice Book § 17-19. Furthermore, his legal analysis is essentially limited to a single sentence: "By not following the court's [May 6, 2015] order in a timely fashion, this case should have been dismissed with prejudice." The defendant has provided no analysis or cited any legal authority, however, suggesting that a court is required to exercise its discretion under Practice Book § 17-19 sua sponte. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Kelib* v. *Connecticut Housing Finance Authority*, 100 Conn. App. 351, 353, 918 A.2d 288 (2007). Thus, even if preserved, the defendant has failed to brief this claim adequately. Accordingly, we decline to review it.

## VI

We turn next to the defendant's claim that the court improperly failed to "[give] credence to" what he describes as "the bifurcation of the note and mortgage." The defendant asserts that "[t]he splitting of the note and mortgage creates an immediate and fatal flaw in title." We decline to review this claim because it is not adequately briefed.

As we previously have indicated in this opinion, we will not review a claim that is devoid of any legal analysis. With respect to this claim, the defendant's brief is inadequate in at least two ways. First, it is unclear from the brief whether the defendant's claim challenges the court's decision to render summary judgment as to liability, the judgment of strict foreclosure, or both. Second, the defendant's brief contains only bald citations to two out-of-state cases, presumably because he believes that those decisions support his claim. The defendant does not explain, however, how the cited case law is applicable to the specific facts of the present case, whether there is Connecticut authority on the question, or why this court should adopt the reasoning of the cited cases. "[A]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Tonghini* v. *Tonghini*, 152 Conn. App. 231, 240, 98 A.3d 93 (2014). This would include the requirement that an appellant adequately brief all claims raised on appeal. Id. Because the defendant has not adequately briefed this claim beyond his mere abstract legal assertion, we decline to review it.

## VII

The defendant next claims that the court improperly

failed to address whether the substitute plaintiff had standing to prosecute this action and that the substitute plaintiff, in fact, lacks standing. We reject this claim and conclude on the basis of the record presented that the defendant failed to rebut the presumption that the substitute plaintiff has standing to prosecute this action as the holder of the note and mortgage.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [If] a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . In addition, because standing implicates the court's subject matter jurisdiction, the issue of standing is not subject to waiver and may be raised at any time." (Internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 145, 125 A.3d 262 (2015).

"The rules for standing in foreclosure actions [in which] the issue of standing is raised may be succinctly summarized as follows. [If] a holder seeks to enforce a note through foreclosure, the holder must produce the note. The note must be sufficiently endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. If the foreclosing party shows that it is a valid holder of the note and can produce the note, it is presumed that the foreclosing party is the rightful owner of the debt. That presumption may be rebutted by the defending party, but the burden is on the defending party to provide sufficient proof that the holder of the note is not the owner of the debt, for example, by showing that ownership of the debt had passed to another party. It is not sufficient to provide that proof, however, merely by pointing to some documentary lacuna in the chain of title that *might* give rise to the possibility that some other party owns the debt. In order to rebut the presumption, the defendant must *prove* that someone else is the owner of the note and debt. Absent that proof, the plaintiff may rest its standing to foreclose on its status as the holder of the note." (Emphasis in original; footnote omitted.) Id., 150.

Turning to the defendant's claim, we first reject the defendant's suggestion that the trial court failed to consider his standing arguments because that claim is not supported by the record. The defendant arguably raised standing both in objection to the motion for summary judgment and at the hearing on the motion for a judgment of strict foreclosure. Although neither judge filed a written memorandum of decision addressing stand-

ing, it nevertheless is implicit in the court's decision to grant the motion for summary judgment as to liability that it concluded there was no genuine issue of fact regarding the substitute plaintiff's status as the holder of the note or mortgage. In order to be entitled to summary judgment as to liability, the substitute plaintiff had to establish that there was no factual dispute as to its status as the holder of the note and mortgage. See *GMAC Mortgage, LLC* v. *Ford*, supra, 144 Conn. App. 174. Further, in rendering the judgment of strict foreclosure, the court implicitly rejected the defendant's suggestion at the hearing that it remained undetermined whether the substitute plaintiff was "the right holder." The defendant never sought an articulation of either the court's ruling on the motion for summary judgment or the judgment of strict foreclosure. An articulation is the proper vehicle to test whether a court has failed to consider or overlooked an argument properly raised. See *Brennan* v. *Brennan Associates*, 316 Conn. 677, 705, 113 A.3d 957 (2015) (responsibility of appellant to ask trial judge to rule on overlooked matter). Because the defendant has provided no support for his assertion that the trial court failed to consider his standing arguments, we reject that aspect of his claim.

Because standing can be raised at any stage of the proceedings, we next consider the merits of the standing arguments briefed by the defendant on appeal. First, the defendant argues that the original plaintiff "is not on file as licensed to do business in Connecticut," relying on a business inquiry search for The Bank of New York Mellon on the Secretary of the State's website. The defendant cites case law for the proposition that a plaintiff must have an actual legal existence and cannot bring an action using a fictitious name. Second, the defendant raises a number of allegations the gravamen of which is that the note and mortgage were transferred in violation of terms of the mortgage trust's pooling and servicing agreement. For the reasons that follow, we conclude that neither of the defendant's arguments implicates standing and that the record establishes that the substitute plaintiff has standing to assert its claims.

First, the defendant's business inquiry search for The Bank of New York Mellon on the Secretary of the State's website, without more, is insufficient to establish as a matter of law that The Bank of New York Mellon is either an improper legal entity or a fictitious name. As the substitute plaintiff correctly notes in its appellate brief, the defendant's argument is belied by the fact that the Connecticut Department of Banking's website includes The Bank of New York Mellon in its list of out-of-state banks operating branches in Connecticut. See Connecticut Dept. of Banking, Banks in Connecticut, available at http://www.ct.gov/dob/cwp/view.asp?a=22 28&q=296954&dobNAV_GID=1660 (last visited May 30, 2018).

Second, the defendant is not a party to the pooling and servicing agreement at issue. In *Wells Fargo Bank, N.A.* v. *Strong*, 149 Conn. App. 384, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014), this court rejected arguments nearly identical to those made by the defendant, concluding that they did not implicate standing. "Our appellate courts have not required a foreclosure plaintiff to produce evidence of ownership deriving from a pooling and servicing agreement in making its prima facie case . . . ." Id., 399. "The relevance of securitization documents [to] a lender's standing to foreclose a mortgage is questionable. Simply put, a borrower has a contract—the note and mortgage—with the owner or holder of the loan documents. The borrower, however, is not a party to the pooling and servicing agreement, commonly referred to as a trust document. . . . It is a basic tenet of contract law that only parties to an agreement may challenge its enforcement. . . . [C]lose scrutiny of trust documents and challenges to their veracity appear to offer little benefit to the court in determining the owner or holder of a note in a particular case. If admissible evidence of holder status has been presented, a borrower must then challenge those facts by competent evidence addressed to the delivery of the loan documents. In most instances, a borrower's challenge to the content of trust documents or other borrower claims appear to have little relevance to the issue of standing." (Internal quotation marks omitted.) Id., 393–94. The defendant has not addressed *Wells Fargo Bank, N.A.*, or in any way tried to distinguish its holding from the facts of the present case. We conclude that, like in *Wells Fargo Bank, N.A.*, the defendant's claim here does not implicate the plaintiff's standing to bring the action.

The original plaintiff alleged in the complaint that it was the holder of the note and mortgage. The mortgage later was transferred during the pendency of the action to the substitute plaintiff, who was substituted in as the plaintiff. Along with its motion for summary judgment, the substitute plaintiff submitted an affidavit averring that it was currently the holder of the note and the mortgage. Neither the factual allegations of the original plaintiff nor the affidavit submitted by the substitute plaintiff were disputed by any evidence provided by the defendant. At the time judgment was rendered, the substitute plaintiff demonstrated that it was in possession of the original note, which included an allonge with a specific endorsement to the substitute plaintiff. In addition, the substitute plaintiff presented to the court original copies of the mortgage and assignments. The defendant has failed to direct our attention to any evidence in the record that would rebut the presumption that the substitute plaintiff, as the holder of the note, owns the debt. Because the record before us establishes that the substitute plaintiff has standing, we reject the defendant's claim.

## VIII

Finally, the defendant claims that the court "ignored fraud upon the court" perpetrated by the substitute plaintiff. The defendant suggests that the substitute plaintiff (1) misrepresented to the court that it was the holder of the original note, (2) fabricated its excuse of waiting for the return of the original note as the reason for the delay in prosecuting the action, and (3) "fabricated documents, used robo-signers and claimed money that was not due to them because they did not have the proper paperwork when the suit was initiated." In support of these assertions, the defendant makes reference to instances of bank fraud associated with the recent mortgage crisis but fails to cite to any evidence in the record indicating that this type of fraud occurred in his case. As we have indicated previously, "we take seriously all allegations of fraud and misdeeds in the prosecution of residential mortgage foreclosure actions before the courts of this state. Some evidence suggesting actual wrongdoing, however, and not merely the specter of such, is necessary in order to set aside a final adjudication." *Bank of America, N.A.* v. *Thomas*, 151 Conn. App. 790, 806 n.7, 96 A.3d 624, 634 (2014). The defendant's unsupported claim that the court turned a blind eye to fraud in this case lacks merit, and, accordingly, we summarily reject it.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Jacquelyn Costa Horsey and Sovereign Bank also are named as defendants in the foreclosure action. Neither, however, has appealed from the judgment of foreclosure or participated in the present appeal, and, therefore, we refer in this opinion to Wade H. Horsey II as the defendant.

[2] The note originally was executed by the defendant in favor of Novastar Mortgage, Inc. (Novastar), and the mortgage securing the note was executed in favor of Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Novastar and its successors and assigns. In October, 2008, MERS assigned the mortgage to the original plaintiff. The note was endorsed from Novastar to JPMorgan Chase Bank, N.A., the original trustee of the Novastar Mortgage Funding Trust 2005-2, and then from JPMorgan Chase Bank, N.A., to the substitute plaintiff as the successor trustee.

[3] We note that the copy of the objection to the motion for summary judgment included in the defendant's appendix, although substantially similar, is not the objection filed with the court. Because our review is limited to the record before the trial court, any reference to the defendant's objection to the motion for summary judgment is to the objection that is contained in the trial court file.

[4] The defendant submitted three documents: An article of unknown origin titled "Robo-Signer Misdeeds May Help Homeowners" attributed to Jorge Newbery; an incomplete copy of a Wikipedia article titled "Libor scandal"; and a search result page from a website called MERS ServicerID.

[5] "In a mortgage foreclosure action, a defense to the amount of the debt must be based on some articulated legal reason or fact." (Internal quotation marks omitted) *Bank of America*, *N.A.* v. *Chainani*, 174 Conn. App. 476, 486, 166 A.3d 670 (2017). Although, unlike a defense to liability, a defense challenging the amount of the debt does not need to be disclosed prior to a judgment hearing, the defense nevertheless "must be squarely focused on the amount of the debt rather than other matters that are ancillary to the amount of the debt, such as whether the loan is in default, which is a matter of liability, or challenges that attack the credibility of the affiant or defects in the execution of the affidavit itself." Id., 487. If a proper defense as to

the amount of the debt is not pursued, Practice Book § 23-18 (a), which authorizes the plaintiff to prove the amount of the debt through affidavit and documentary submissions, is applicable. Id., 486. The defendant never advanced any theory of defense to the court related to the amount of indebtedness. Rather, he returned to challenges related to the substitute plaintiff's authority to prosecute the action and whether alleged irregular procedures regarding the assignment of the note and mortgage invalidated the foreclosure action; issues that already had been raised and implicitly rejected by the court in rendering summary judgment as to liability.

[6] Even if we considered the merits of the defendant's claim, we are unconvinced on the basis of our review of the hearing transcript that there is any compelling argument for the finding of judicial bias in this case. Although the court mentioned several times that the defendant had been able to live at the foreclosed property for approximately seven years without paying his mortgage, those statements, rather than necessarily evincing bias, were made in response to the legal arguments of the defendant and in the context of assessing whether the defendant was prejudiced by the substitute plaintiff's purported lack of diligence in bringing the action to judgment following the granting of the motion for summary judgment as to liability. The court's assertions were factual and supported by the evidence and thus do not reflect bias.

[7] We feel compelled to note that the defendant has not distinctly raised or briefed as a claim on appeal whether the court properly denied his request for a continuance. It is well settled that "[a] trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 71 Conn. App. 565, 574, 803 A.2d 919, cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002). Given the equitable nature of foreclosure proceedings and the important interests at stake, we question the court's decision to adjudicate immediately the reclaimed motion for a judgment of strict foreclosure, particularly in light of the defendant's request for a continuance and given that the court, immediately prior to the defendant's request, had set aside a disciplinary judgment of dismissal based on the substitute plaintiff's failure to exercise due diligence in prosecuting the action. We do not mean to suggest that the court abused its discretion in denying the defendant's request for a lengthy, two month continuance, which, as we have indicated, is not an issue that is properly before us because he has not raised it as a claim on appeal. We simply take this opportunity to suggest that it may have been equitable under the circumstance for the court to have provided the defendant some additional time to evaluate the revised documents submitted by the substitute plaintiff.