# ULSTER SAVINGS BANK *v.* 28 BRYNWOOD LANE, LTD., ET AL.
## (AC 32568)

Robinson, Bear and Schaller Js.

Argued January 17—officially released April 10, 2012

*Genevieve P. Salvatore*, for the appellant (named defendant).

*Peter A. Ventre*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, 28 Brynwood Lane, Ltd.,[1] appeals from the trial court's judgment of strict

[1] Because 28 Brynwood Lane, Ltd., is the only defendant that is a party to this appeal, we will refer to it as the defendant throughout this opinion. Robert T. Chipley, Jr., who formed 28 Brynwood Lane, Ltd., for the purpose of taking title to the subject property, was named as a defendant in this foreclosure action as the comaker of the note but has not challenged the judgment of foreclosure. The complaint also named as additional defendants Victoria R. Koch, the holder of a $1.6 million purchase money mortgage, and Seaport Electric, Inc., and Pasiak Construction Services, LLC, each of whom holds a mechanic's lien on the subject property. Those interests were subsequent in right to the plaintiff's mortgage. Seaport Electric, Inc., and Pasiak Construction Services, LLC, never appeared before the trial court; Koch appeared as a self-represented party and participated in the action, but she is not a party to this appeal. Finally, the town of Greenwich was named in the complaint by virtue of holding inchoate real estate tax liens that are prior in right to the plaintiff's mortgage.

foreclosure rendered following the granting of a motion for summary judgment in favor of the plaintiff, Ulster Savings Bank. On appeal, the defendant claims that the court improperly (1) granted summary judgment as to liability on the foreclosure complaint in favor of the plaintiff because the defendant's special defenses alleging lack of standing, unclean hands and breach of the covenant of good faith and fair dealing raised triable issues of fact and (2) granted summary judgment as a matter of law on the defendant's counterclaim because there were genuine issues of material fact as to whether the plaintiff's actions violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's claims. On October 4, 2002, the defendant and Robert T. Chipley, Jr., obtained a three million dollar construction loan for a home that Chipley intended to build on property located at 28 Brynwood Lane in Greenwich. The defendant and Chipley executed a note in favor of the lender, Ulster Home Mortgage, Inc. The terms of the note required monthly, interest only payments until April 4, 2004, at which time any unpaid principal and interest would be due in full. As security for the note, the defendant executed a mortgage on the subject property in favor of Ulster Home Mortgage, Inc. On the same day that the note and mortgage were executed and recorded, Ulster Home Mortgage, Inc., assigned the mortgage and note to the plaintiff. The assignment was recorded on the land records.

In October, 2005, the plaintiff commenced this action to foreclose the mortgage on the subject property. According to the complaint, the note had matured by its terms and payment was now due in full. The plaintiff filed a motion for summary judgment as to liability only against the defendant and Chipley. On January 27, 2010,

the defendant filed its third amended answer, which included three special defenses, a claim for setoff and a counterclaim against the plaintiff alleging a CUTPA violation. The first special defense alleged that the plaintiff lacked standing to bring the foreclosure action because it was not a valid holder of the note and mortgage. The second special defense alleged that the plaintiff was barred from foreclosing on the mortgage because it had unclean hands in connection with its enforcement of the mortgage. The third special defense alleged that the plaintiff had breached the covenant of good faith and fair dealing.

The factual underpinning for the defendant's CUTPA counterclaim and for its special defenses of unclean hands and breach of the covenant of good faith and fair dealing is a letter that the plaintiff sent to the defendant in January, 2004, which the defendant describes as a "[lo]an [m]odification [l]etter."[2] The letter noted the approaching loan maturity date. It expressly provided that the plaintiff would consider the loan to be in default if it matured before the defendant either paid off the loan in full or converted it into a "permanent mortgage." The letter also stated that if the loan matured

[2] The letter provided as follows: "The most recent review of your . . . construction loan indicates that it will mature on April 4, 2004. The original terms of your Building and Loan Agreement require the loan to be completely satisfied or converted to a permanent mortgage within eighteen months.

"Should your loan become mature before it is paid off or converted to a permanent mortgage it will be considered in default. Upon maturity, Ulster Savings Bank will review your mortgage file to determine whether you should refinance your construction loan for a new construction term. If refinance is found to be necessary, you will incur all additional closing costs.

"If we determine that the refinancing of your loan will not be necessary, the following will occur. The interest rate on your construction loan will become variable upon maturity. The rate will be the higher of your current interest rate or the Prime Rate plus 2%. This variable rate structure will remain in effect until the loan is converted to a permanent mortgage or paid off in full. This will be reflected in your monthly interest billing statement following the date of maturity."

before it was paid off or converted, the plaintiff would review the file to determine whether refinancing of the loan was necessary, in which case the defendant would be responsible for additional closing costs, or whether the plaintiff simply would continue to accept payments without refinancing, but at a higher, variable rate of interest until the mortgage was paid in full or converted. At the bottom of the letter were the directions "[p]lease sign and return" along with a line for a signature and date.

The plaintiff filed a "supplement" to its pending motion for summary judgment requesting that the court also render summary judgment against the defendant on its CUTPA counterclaim and its claim for a setoff. The plaintiff also argued in the accompanying supplemental memorandum of law that the special defenses asserted by the defendant failed to raise any triable issues of material fact that would preclude the court from rendering summary judgment as to liability on the complaint.

The court heard oral argument on the plaintiff's motion for summary judgment, as supplemented, on May 19, 2010.[3] On May 27, 2010, the court issued a memorandum of decision granting, inter alia, summary judgment in favor of the plaintiff on the foreclosure complaint as to liability only and on the defendant's counterclaim. On July 19, 2010, the court rendered a judgment of strict foreclosure with law days to begin on September 13, 2010. This appeal followed.

Our resolution of the defendant's appeal "is governed by a well established standard of review. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any

[3] The defendant abandoned further pursuit of its setoff claim at the hearing on the motion for summary judgment.

genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Mortgage Electronic Registration Systems, Inc.* v. *Goduto*, 110 Conn. App. 367, 370–71, 955 A.2d 544, cert. denied, 289 Conn. 956, 961 A.2d 420 (2008). Further, because any valid special defense raised by the defendant ultimately would prevent the court from rendering judgment for the plaintiff, a "motion for summary judgment should be denied when any [special] defense presents significant fact issues that should be tried." (Internal quotation marks omitted.) *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 417, 679 A.2d 421 (1996). "The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 102 Conn. App. 305, 310, 925 A.2d 432, cert. denied, 284 Conn. 906, 931 A.2d 261 (2007).

"Our review of the trial court's decision to grant the . . . motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Navin* v. *Essex Savings Bank*, 82 Conn. App. 255, 258, 843 A.2d 679, cert. denied, 271 Conn. 902, 859 A.2d 563 (2004). With those principles in mind, we turn to the defendant's claims on appeal.

I

The defendant first argues that in rejecting its special defenses and rendering summary judgment against it as to liability on the foreclosure complaint, the court improperly decided genuine issues of material fact that should have precluded summary judgment. We disagree with the defendant that its special defenses raised any

triable issues of fact. We address each of the defenses in turn.

A

The defendant's first special defense alleged that the plaintiff lacked standing to bring the foreclosure action because it is not the holder of the applicable note and mortgage. The court concluded that the defendant's challenges to the validity of the assignment of the note and mortgage failed as a matter of law, the defendant had presented no triable issue of fact concerning the plaintiff's right to enforce the note, and, accordingly, the plaintiff had standing to maintain the foreclosure action. We agree with the court's conclusion.

The question of standing implicates a court's subject matter jurisdiction and, as such, may be raised at any time during the proceedings. See *Housing Authority* v. *Local 1161, Council 4, AFSCME*, 1 Conn. App. 154, 157, 468 A.2d 1251, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984). "Our review of the question of . . . standing is plenary." *Cimmino* v. *Household Realty Corp.*, 104 Conn. App. 392, 395, 933 A.2d 1226 (2007), cert. denied, 285 Conn. 912, 943 A.2d 470 (2008). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Standing [however] is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citation omitted; internal quotation

marks omitted.) *Chase Home Finance, LLC* v. *Fequiere,* 119 Conn. App. 570, 575, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

The parties agree that on October 4, 2002, the defendant executed and delivered a valid note and mortgage to Ulster Home Mortgage, Inc. On that same day, Ulster Home Mortgage, Inc., executed an assignment that transferred ownership of the mortgage "together with the note therein described" from Ulster Home Mortgage, Inc., to the plaintiff. In support of its motion for summary judgment, the plaintiff submitted a certified copy of the assignment and an uncontested, sworn affidavit from an assistant vice president of the plaintiff attesting to the fact that the note and mortgage were transferred to the plaintiff on October 4, 2002. The trial court found, on the basis of its examination of the assignment, that it "was properly executed, acknowledged and recorded in the Greenwich [l]and [r]ecords." The plaintiff also submitted the original note to the trial court as an exhibit at the hearing on the motion for summary judgment.[4]

The only evidence submitted by the defendant relevant to the standing issue was an affidavit from a paralegal who had examined copies of the note and the assignment. The paralegal attested that her review of the note revealed that it was neither specially endorsed to the plaintiff nor endorsed in blank, which the defendant argues creates an issue of material fact regarding whether the plaintiff has standing to enforce the note.

---

[4] After examining the note produced by the plaintiff, the trial court stated: "I'm going to state for the record that it appears to be an original. If there's any evidence to the contrary I'll hear that evidence." The defendant never presented any such contrary evidence or otherwise suggested that the note presented was not the original. In fact, the defendant itself relied on the fact that the note was the original in support of its claim that the note was unendorsed. Counsel for the defendant stated: "Your Honor has the original notes provided by the plaintiff today, and Your Honor will see that there [are] no endorsements."

The affidavit also indicated that the assignment does not contain specific recording information about the mortgage it purports to assign, and it is attested to by only a single witness, both of which, the defendant claims, calls into question the validity of the assignment.

Although the defendant contends that the assignment's lack of information regarding the book and page number on which the mortgage it purports to assign is recorded raises a factual dispute about the validity of the assignment, the defendant cites no statutory authority or case law that supports the proposition that a mortgage assignment is rendered ineffective without such information. General Statutes § 49-10 (b) provides that a valid assignment of mortgage debt must be in writing and that it must contain "a sufficient description to identify the mortgage" being assigned.[5] Section 49-10 (b) contains suggested language for an assignment that makes use of the book and page number of the land record on which the mortgage is recorded to help

---

[5] Section 49-10 (b) provides in relevant part: "Whenever any mortgage debt is assigned by an instrument in writing containing a sufficient description to identify the mortgage, assignment of rent or assignment of interest in a lease, given as security for the mortgage debt, and that assignment has been executed, attested and acknowledged in the manner prescribed by law for the execution, attestation and acknowledgment of deeds of land, the title held by virtue of the mortgage, assignment of rent or assignment of interest in a lease, shall vest in the assignee. An instrument substantially in the following form is sufficient for such assignment:

"Know all Men by these Presents, That . . . . of . . . . in the county of . . . . and state of . . . . does hereby grant, bargain, sell, assign, transfer and set over a certain (mortgage, assignment of rent or assignment of interest in a lease) from . . . . to . . . . dated . . . . and recorded in the records of the town of . . . . county of . . . . and state of Connecticut, in book . . . . at page . . . .

"In Witness Whereof . . . . have hereunto set . . . . hand and seal, this . . . . day of . . . . A.D. . . . .

"Signed, sealed and delivered

"in the presence of

(SEAL)

(Acknowledged)"

identify the mortgage being assigned. There is no statutory requirement, however, that a party use the exact language or form provided for in the statute. Here, rather than identifying the mortgage by its recording information, the assignment identifies the mortgage by describing it as "a mortgage dated October 4, 2002, made by 28 BRYNWOOD LANE LTD on lands located at T/Greenwich in the County of Fairfield and State of CT to secure payment of the principal sum of $3,000,000, which mortgage is being recorded simultaneously herewith in the Office of the Registrar of T/Greenwich Township, together with the Note therein described, and the money due and to grow due thereon . . . ." The trial court legally and logically determined that the description contained in the assignment was sufficient to identify the mortgage at issue here, especially given that the mortgage and the assignment were recorded simultaneously, and the assignment of mortgage is recorded in the same book, on pages immediately following the recording of the mortgage.

We further agree with the trial court that it is immaterial to the validity of the assignment and, thus, to the issue of standing, that the assignment of the mortgage was only attested to by a single witness. An assignment of a mortgage "is in effect a conveyance of the land included in the mortgage"; (internal quotation marks omitted) *Family Financial Services, Inc.* v. *Spencer,* 41 Conn. App. 754, 761, 677 A.2d 479 (1996); accordingly, the provisions of General Statutes § 47-5 generally apply, including the requirement that a conveyance be "attested to by two witnesses with their own hands." General Statutes § 47-5 (a). Our statutes also provide, however, that a conveyance of Connecticut property that is executed and acknowledged in another state is valid so long as it was executed and acknowledged "in conformity with the laws of that state . . . relating to the conveyance of real estate therein situated." General

Statutes § 47-7 (a). Here, the assignment indicates on its face that it was executed in Ulster County, New York. Under New York law, conveyances of property must be duly acknowledged, but no attesting witnesses are required. See N.Y. Real Prop. Law § 291 (McKinney 2006). The assignment was duly acknowledged before a New York notary public. Accordingly, the assignment is valid as a matter of law, despite being attested to by only a single witness.

As for the note, we agree with the trial court that the note's lack of an endorsement does not raise any triable issue of fact regarding the plaintiff's standing to bring this foreclosure action. The mortgage note, as a negotiable instrument, is governed by the provisions of Connecticut's Uniform Commercial Code concerning negotiable instruments. General Statutes § 42a-3-101 et seq. A blank or special endorsement is necessary to negotiate an instrument. See General Statutes § 42a-3-204 (a) (i). Negotiation of an instrument means a transfer of possession by someone other than the issuer of the instrument to another person, who, through negotiation, becomes the holder of the instrument. See General Statutes § 42a-3-201 (a). Nevertheless, "[t]ransfer of an instrument, *whether or not the transfer is a negotiation,* vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . ." (Emphasis added.) General Statutes § 42a-3-203 (b). An instrument is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." General Statutes § 42a-3-203 (a). Accordingly, a note that is unendorsed still can be transferred to a third party. Although that third party technically is not a holder of the note, the third party nevertheless acquires the right to enforce the note so long as that was the intent of

the transferor. In the present case, Ulster Home Mortgage, Inc., transferred the note to the plaintiff for the purpose of giving the plaintiff the right to enforce the note, as evidenced by the valid assignment, the sworn affidavit and the plaintiff's possession of the original note. The transfer vested in the plaintiff the same right to initiate the present foreclosure action as Ulster Home Mortgage, Inc., had as the uncontested original holder of the note.

In sum, it is undisputed that the plaintiff is in lawful possession of the original note. The assignment of mortgage from Ulster Home Mortgage, Inc., to the plaintiff is evidence that ownership of the mortgage and the right to recover under the note were transferred to the plaintiff on October 4, 2002, before the commencement of this foreclosure action. On the basis of our plenary review, we conclude that the court's decision that the plaintiff had standing to bring this foreclosure action is legally and logically correct and supported by the uncontested facts.

## B

The defendant's second special defense alleged that the plaintiff had unclean hands in connection with its enforcement of the mortgage. The court rejected the unclean hands special defense as a matter of law because the defendant failed to show the existence of a genuine issue of fact regarding whether the plaintiff had engaged in wrongful conduct sufficient to support application of the doctrine. We conclude that the court properly interpreted the doctrine of unclean hands and correctly granted summary judgment as to the special defense.

Because "an action to foreclose a mortgage is an equitable proceeding," the doctrine of unclean hands may be applicable. *Thompson* v. *Orcutt*, 257 Conn. 301, 310, 777 A.2d 670 (2001). "The doctrine of unclean hands

expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Citation omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 525, 686 A.2d 481 (1996). "[A]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . Whether the trial court properly interpreted the doctrine of unclean hands, however, is a legal question distinct from the trial court's discretionary decision whether to apply it." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, supra, 308.

According to the defendant, the wrongful conduct of the plaintiff that supports application of the doctrine of unclean hands was the plaintiff's issuance of the January, 2004 letter. According to the defendant, the letter amounted to a promise by the plaintiff to extend the term and rate of the original note and mortgage without specifying a new date certain by which time the loan had to be paid off or converted. The defendant claims it relied on the letter as a modification of the terms of the original note and mortgage, in particular the original note's April 4, 2004 maturity date, and that it sent payments to the plaintiff in accordance with the letter, which the plaintiff accepted. The defendant claims that the plaintiff acted unfairly, inequitably and

wilfully when, after agreeing to modify the loan, it nevertheless filed the present foreclosure action declaring the defendant in default on the original note. Put simply, the defendant's position is that the note as modified by the January, 2004 letter is not in default and, thus, cannot provide a basis for foreclosing on the mortgage.

The trial court concluded that, even considering all the evidence most favorably to the defendant, no reasonable fact finder could conclude that the January, 2004 letter modified or offered to modify the terms of the loan so as to eliminate the loan's April 4, 2004 maturity date. To the contrary, the January, 2004 letter expressly stated that the loan "will mature on April 4, 2004" and "[s]hould your loan become mature before it is paid off or converted to a permanent mortgage it will be considered in default." That portion of the letter addressing the defendant's obligation to continue to pay interest on the loan at the same or higher rate until the loan was either paid off or converted was consistent with the default procedure contained in the original note. In other words, the letter was a reminder of the penalty that would be imposed if the defendant defaulted on the note. The only evidence presented by the defendant in support of its claim of unclean hands is an affidavit from Chipley attesting that the defendant had relied on the letter as a modification. The defendant does not claim nor is there evidence in the record that either party sought or even suggested a modification of the terms of the original loan. As the trial court observed, construing the letter in the way sought by the defendant would be unreasonable because it would lead to the bizarre result that, so long as interest payments were made, a bank would agree to waive or to forgive indefinitely repayment of a three million dollar loan it would otherwise be entitled to collect. On the basis of our review of the record, we disagree with the defendant's assertion on appeal that the letter raised

a genuine issue of material fact concerning improper action of the plaintiff necessary to avoid summary judgment on its special defense of unclean hands.

C

The defendant's third special defense to the foreclosure action alleged that the plaintiff's actions in connection with the January, 2004 letter constituted a violation of the covenant of good faith and fair dealing. The defendant claims that the January, 2004 letter left the defendant with the reasonable expectation that it did not need to pay off the construction loan by April 4, 2004. We disagree.

"[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 240, 915 A.2d 290 (2007).

As we determined in addressing the special defense of unclean hands, the trial court correctly concluded that, even considering all the evidence most favorably to the defendant, no reasonable fact finder could conclude that the January, 2004 letter modified or offered to modify the terms of the loan so as to eliminate the loan's April 4, 2004 maturity date. In rejecting the defendant's special defense based on an alleged breach of the covenant of good faith and fair dealing, therefore, the court properly concluded as a matter of law that the defendant could not have had a reasonable expectation that there was no obligation to pay off or convert the loan by April 4, 2004. By filing the foreclosure action and declaring the defendant in default, the plaintiff was simply pursuing its rights under the terms of the parties'

existing agreement. Such action could not form the basis for a claim of bad faith or unfair dealings on the part of the plaintiff. The court therefore legally and logically determined that the defendant's claim of a violation of the covenant of good faith and fair dealing could not survive summary judgment.

II

Finally, the defendant claims that the court improperly granted summary judgment in favor of the plaintiff on its CUTPA counterclaim. The defendant, relying once again on its assertion that the January, 2004 letter modified or promised to modify its obligation to pay off the construction loan by April 4, 2004, argues that the plaintiff wholly disregarded its promises and representations in the January, 2004 letter and that it affirmatively and in bad faith shirked its obligations under the letter. The court ultimately concluded that the facts alleged by the defendant failed to support the defendant's counterclaim alleging a CUTPA violation. We agree that the CUTPA counterclaim fails as a matter of law.

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3)

whether it causes substantial injury to consumers (or competitors or other businessmen). . . . Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy. . . . Whether a practice is unfair and thus violates CUTPA is an issue of fact. . . . The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court. . . . Additionally, our Supreme Court has stated that [a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Citation omitted; internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 413, 867 A.2d 841 (2005).

"A party seeking to recover damages under CUTPA must meet two threshold requirements. First, [the party] must establish that the conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, [the party] must present evidence providing the court with a basis for a reasonable estimate of the damages suffered." (Citation omitted.) *A. Secondino & Son, Inc.* v. *LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990). Apart from the January, 2004 letter, the only evidence presented in support of the defendant's CUTPA counterclaim regarding the plaintiff's alleged unfair trade practice was the Chipley affidavit in which Chipley attests that the plaintiff promised in the January, 2004 letter to extend the term and rate of the original note and that the letter did not specify a new date by which time the loan had to be paid off or converted. We already have affirmed the trial court's determination that Chipley's conclusory statements are wholly unsupported by the text of the letter and do not raise a dis-

puted issue of material fact because no reasonable fact finder could conclude that the January, 2004 letter either modified or offered to modify the terms of the loan so as to eliminate the loan's April 4, 2004 maturity date. Although whether a claimed practice is unfair and thus violates CUTPA is ordinarily a question of fact for the trier, summary judgment is appropriate where, as here, the plaintiff would be entitled to a directed verdict. See *Boone* v. *William W. Backus Hospital,* supra, 102 Conn. App. 310. Because the defendant's claim of unfair trade practices rests entirely on a factually unsupported allegation that the plaintiff failed to honor a promised modification of the note contained in the January, 2004 letter, the CUTPA claim fails as a matter of law, and the court was legally and logically correct in having granted summary judgment in favor of the plaintiff.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.