******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JPMORGAN CHASE BANK, NATIONAL ASSOCIATION *v.* SONIA SYED ET AL.
## (AC 41723)

Lavine, Bright and Devlin, Js.

*Syllabus*

The defendant appeals from the judgment of strict foreclosure rendered by the trial court in favor of the second substitute plaintiff, W Co. The defendant initially executed the mortgage in favor of M Co.; J Co. then assigned the mortgage to itself, commenced this action, and thereafter filed a motion to substitute C Co. as the plaintiff. C Co. filed a motion for summary judgment as to liability, and the defendant opposed the motion, claiming that the note, which was endorsed in blank by M Co., was endorsed falsely by R, a former employee of the relevant department of M Co., who did not actually sign the note but, rather, someone else signed R's name or used a signature stamp bearing R's signature on the endorsement. The trial court granted C Co.'s motion for summary judgment as to liability and subsequently rendered a judgment of strict foreclosure. *Held*:

1. The defendant could not prevail on her claim that the trial court improperly granted summary judgment as to liability, which was based on her claim that there were genuine issues of material fact concerning whether J Co. was the holder of the note at the time it commenced this action due to an invalid endorsement of the note by M Co.: the defendant's claim that, because the purported signature was not R's signature it was not an endorsement at all, was inconsistent with the broad definition of signature under the applicable statute (§ 42a-3-401 (b)), and the defendant did not dispute that the endorsement stamp was placed on the note by someone affiliated with M Co., the name of a former employee fell within the definition of § 42a-3-401 (b), and the fact that M Co. chose to use a stamp bearing the signature of a former employee was of no import to the analysis under § 42a-3-401 (b), which pertains to a bank's rights and obligations related to the note, rather than to one of the bank's former employees; accordingly, the stamped signature met the signature requirements for negotiable instruments and, because the endorsement did not identify a person to whom it made the instrument payable, the note was endorsed in blank, making it payable to the bearer and, thus, J Co., which was in possession of the original note, was entitled to the presumption that it was the owner of the debt with the right to enforce it.

2. The defendant's claim that the trial court improperly rejected her first and third special defenses when granting summary judgment as to liability was unavailing: by the defendant's own characterization, the first and third special defenses pertained to the issue of damages and not to liability, and the court's determination that the special defenses failed to defeat summary judgment was isolated to the issue of liability, as there was no indication that the court disposed of the special defenses for purposes of challenging the amount of debt before it rendered a judgment of strict foreclosure; moreover, at the hearing on the motion for judgment of strict foreclosure, the defendant failed to raise these special defenses or challenges to the amount of debt owed, and, therefore, the defendant could not attempt to use her challenge to the court's decision granting summary judgment as to liability as a vehicle to resurrect the special defenses she failed to raise during the hearing on the motion for judgment of strict foreclosure.

3. The defendant could not prevail on her claim that the trial court improperly struck the fourth count of her amended counterclaim when granting summary judgment as to liability, which was based on her claim that the court incorrectly determined that the count of her counterclaim seeking attorney's fees pursuant to statute (§ 42-150bb), did not meet the transaction test set forth in the applicable rule of practice (§ 10-10): the defendant's claim mischaracterized the record, because the court was not asked to strike the fourth count of her counterclaim, and the

court's memorandum of decision contained no indication that it did so; the court highlighted the bizarre nature of the fourth count, in which the defendant claimed she was entitled to attorney's fees, and the court held that, even if such a right existed, the count had no reasonable nexus to the making, validity or enforcement of the mortgage note and, accordingly, the court concluded that it was not precluded from granting summary judgment on that basis; thus, the court did not strike the count but, instead, analyzed the merits of the count and its potential effects on C Co.'s prima facie case of liability, and concluded that the count was insufficient to preclude the granting of summary judgment as to liability.

Argued January 9—officially released April 28, 2020

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the named defendant filed a counterclaim; thereafter, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as Trustee for Normandy Mortgage Loan Trust Series 2013-18, was substituted as the plaintiff; subsequently, the named defendant filed an amended counterclaim; thereafter, the court, *Sheridan, J.*, granted the substitute plaintiff's motion for summary judgment as to liability; subsequently, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2017-1, was substituted as the plaintiff; thereafter, the court, *Cobb, J.*, rendered a judgment of strict foreclosure, from which the named defendant appealed to this court. *Affirmed.*

*John L. Radshaw III*, for the appellant (named defendant).

*Adam L. Avallone*, for the appellee (second substitute plaintiff)

BRIGHT, J. In this foreclosure action, the defendant Sonia Syed[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the second substitute plaintiff, Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, as Trustee for Normandy Mortgage Loan Trust, Series 2017-1 (Wilmington). On appeal, the defendant claims that the trial court erroneously (1) granted the motion filed by the first substitute plaintiff, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB as Trustee for Normandy Mortgage Loan Trust Series 2013-18 (Christiana Trust), for summary judgment as to liability, despite questions concerning whether the original plaintiff, JPMorgan Chase Bank, National Association (JPMorgan), was the holder of the note at the time it commenced this foreclosure action, (2) rejected the defendant's first and third special defenses when granting summary judgment as to liability, and (3) struck the defendant's fourth count of her amended counterclaim when it granted summary judgment as to liability. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The defendant is the borrower on a note and the mortgagor of a mortgage, which initially were executed in favor of Washington Mutual Bank, FA (Washington Mutual), on property located at 1200 Neipsic Road in Glastonbury (property). JPMorgan, as attorney in fact for the Federal Deposit Insurance Corporation, as receiver for Washington Mutual, assigned the mortgage to itself via an assignment dated April 17, 2013.

On May 17, 2013, JPMorgan commenced the present foreclosure action by service of process on the defendant. On December 2, 2014, JPMorgan filed a motion to substitute Christiana Trust as the first substitute plaintiff, which the court granted on December 18, 2014. On January 8, 2014, JPMorgan executed an assignment of mortgage to Christiana Trust. On March 12, 2015, the defendant filed an answer with eighteen affirmative defenses and a two count counterclaim. On May 5, 2015, the defendant filed a disclosure of defense, alleging that Christiana Trust was not the party entitled to collect the debt and enforce the mortgage.

On May 28, 2015, Christiana Trust filed a motion to strike the defendant's special defenses and counterclaim, which the court granted on July 13, 2015. On July 28, 2015, the defendant filed an amended answer, with seven special defenses, and, on September 9, 2015, she filed an amended counterclaim, in which she alleged four counts. On January 5, 2016, Christiana Trust filed a motion for summary judgment as to liability, which was opposed by the defendant on the grounds that she had viable special defenses and a counterclaim, and that

the note, "which was endorsed in blank by [Washington Mutual] was endorsed falsely by an individual named Cynthia Riley, who was not who she said she was at the time of endorsement and/or was not an employee of [Washington Mutual] at the time of the endorsement, and/or did not actually sign the document and someone else signed her name or used a signature stamp on the endorsement."

On January 2, 2018, the court, in a thorough memorandum of decision, concluded that the defendant's special defenses and counterclaim did not create a triable issue as to the defendant's liability to Christiana Trust and that there was no dispute that JPMorgan was the holder of the note at the time it commenced this foreclosure action. Accordingly, the court granted Christiana Trust's motion for summary judgment as to liability. On January 26, 2018, Christiana Trust filed a motion for judgment of strict foreclosure.

On May 2, 2018, Christiana Trust filed a motion to substitute Wilmington as the second substitute plaintiff, which the court granted on May 14, 2018.[2] Also on May 14, 2018, the court rendered a judgment of strict foreclosure, with law days commencing on September 17, 2018. This appeal followed.

On appeal, the defendant claims that the court erred in granting Christiana Trust's motion for summary judgment as to liability. Specifically, the defendant claims that the trial court improperly granted summary judgment as to liability despite questions concerning whether JPMorgan was the holder of the note at the time that it commenced this foreclosure action, that it improperly rejected the defendant's first and third special defenses, and that it improperly struck the defendant's fourth count of her counterclaim. We disagree.

"The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Misiti*, *LLC* v. *Travelers Property Casualty Co. of America*, 132 Conn. App. 629, 637–38, 33 A.3d 783 (2011), aff'd, 308 Conn. 146, 61 A.3d 485 (2013).

"[T]o establish a prima facie case in a mortgage foreclosure action, the plaintiff must prove by a preponderance of the evidence that it is the owner of the note and mortgage, that the defendant mortgagor has defaulted on the note and that any conditions precedent to foreclosure, as established by the note and mortgage, have been satisfied. . . . Thus, a court may properly grant summary judgment as to liability in a foreclosure

action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense.'' (Citations omitted; internal quotation marks omitted.) *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 176, 73 A.3d 742 (2013).

I

The defendant claims that the court improperly rendered summary judgment despite the existence of a genuine issue of material fact regarding whether JPMorgan was the holder of the note at the time it commenced this foreclosure action. The defendant specifically argues that, due to an invalid endorsement of the note by Washington Mutual, JPMorgan and the subsequent substitute plaintiffs were not holders entitled to enforce the note.[3] We are not persuaded.

''In Connecticut, one may enforce a note pursuant to the [Uniform Commercial Code (UCC) as adopted in General Statutes § 42a-1-101 et seq.] . . . . General Statutes § 42a-3-301 provides in relevant part that a [p]erson entitled to enforce an instrument means . . . the holder of the instrument . . . . When a note is endorsed in blank, the note is payable to the bearer of the note. . . . A person in possession of a note endorsed in blank, is the valid holder of the note. . . . *Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. . . .*

''In *RMS Residential Properties, LLC* v. *Miller*, [303 Conn. 224, 32 A.3d 307 (2011), overruled on other grounds by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013)], our Supreme Court stated that to enforce a note through foreclosure, a holder must demonstrate that it is the owner of the underlying debt. *The holder of a note, however, is presumed to be the rightful owner of the underlying debt, and unless the party defending against the foreclosure action rebuts that presumption, the holder has standing to foreclose the mortgage. A holder only has to produce the note to establish that presumption. The production of the note establishes his case prima facie against the* [*defendant*] *and he may rest there. . . . It* [*is*] *for the defendant to set up and prove the facts* [*that*] *limit or change the plaintiff's rights.*'' (Citations omitted; emphasis in original; internal quotation marks omitted.) *U.S. Bank, National Assn.* v. *Fitzpatrick*, 190 Conn. App. 773, 784–85, 212 A.3d 732, cert. denied, 333 Conn. 916, 217 A.3d 1 (2019).

The defendant attempts to rebut the presumption that JPMorgan, as the party in possession of the note, was the rightful owner of the debt and was therefore entitled to foreclose on the property securing it. She argues that the presumption of ownership only exists

when the note is endorsed in blank and contends that, due to Washington Mutual's allegedly fraudulent or otherwise invalid endorsement, the requirement for the presumption to apply was not met. According to the defendant, JPMorgan's simple possession of the note was insufficient to establish its right to enforce the note. To support this claim, the defendant relies on the fact that the endorsement by Washington Mutual was made using the name and signature stamp of Cynthia Riley, a former employee of the bank who was no longer employed at the time of the endorsement.[4] The defendant argues that because the endorsement bore the signature of an individual who no longer had the capacity to make endorsements on behalf of Washington Mutual, the note was never properly negotiated to JPMorgan and, therefore, remained a specially endorsed note payable only to Washington Mutual, rather than a blank endorsement payable to the bearer. The defendant contends that, consequently, neither JPMorgan nor any of the subsequent substitute plaintiffs could have been holders entitled to enforce the note.

Wilmington argues that Riley's employment status was immaterial to the validity of the signature and, therefore, the endorsement was unaffected by the fact that it was made using Riley's signature stamp even though she was no longer employed by Washington Mutual. We agree with Wilmington.

General Statutes § 42a-3-204 (a) defines an endorsement as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (i) negotiating the instrument,[5] (ii) restricting payment of the instrument, or (iii) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement." (Footnote added.) The official commentary to § 42a-3-204 clarifies that "[t]he general rule is that a signature is an indorsement[6] if the instrument does not indicate an unambiguous intent of the signer not to sign as an indorser." An endorsement that does not identify a person to whom it makes the instrument payable is a "blank endorsement." General Statutes § 42a-3-205 (b). "When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." General Statutes § 42a-3-205 (b). In this case, the defendant does not claim that the purported signature of Riley could be read as anything other than an endorsement in blank. Instead, she claims that because the purported signature was not her signature, it is simply not an endorsement at all. The defendant's argument is inconsistent

with how the UCC defines a signature.

General Statutes § 42a-3-401 (b) sets forth signature requirements for a negotiable instrument and provides that "[a] signature may be made (i) manually or by means of a device or machine, and (ii) by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing." The official commentary to § 42a-3-401 explains that "[a] signature may be handwritten, typed, printed or made in any other manner. . . . It may be made by mark, or even by thumbprint. It may be made in any name, including any trade name or assumed name, however false and fictitious, which is adopted for the purpose." Furthermore, the official commentary to § 42a-3-401 states that a "[s]ignature includes an endorsement."

In its memorandum of decision, the court stated that "[t]he defendant ha[d] established only that . . . Riley did not personally sign the endorsement or personally authorize the use of her signature stamp for that purpose. The defendant has not offered evidence to suggest that the endorsement was 'false and fraudulent' in that it was not authorized or adopted by the holder of the note, [Washington Mutual], or that the subsequent negotiation of the note and mortgage to [JPMorgan] was fraudulent and, as a result, [JPMorgan] was not the owner of the debt at the time this action was commenced." We agree.

We are not aware of any Connecticut jurisprudence directly on point and, therefore, have looked to other jurisdictions that have addressed similar issues involving identical or nearly identical versions of the UCC provisions relevant to our disposition of the present case. *In re Bass*, 366 N.C. 464, 738 S.E.2d 173 (2013), a case from North Carolina, illustrates the general approach utilized by courts that have addressed issues regarding the validity of signatures on negotiable instruments. In *In re Bass*, the borrower challenged the validity of an endorsement that was made using a signature stamp that bore only the name of the lender, on the basis that it did not include "some representation of an individual signature . . . ." Id., 469. The borrower argued that, without an individual signature, there would be no way of identifying the individual making the transfer and whether they had authority to authorize the transfer. Id. In other words, the borrower took issue with the content of the signature itself and not just its form (i.e., a stamp versus handwritten).

Regarding the contested stamped signature, the court in *In re Bass* held: "[It] indicates on its face an intent to transfer the debt . . . . We also observe that the original [n]ote was indeed transferred in accordance with the stamp's clear intent. The stamp evidences that it was executed or adopted by the party with present intention to adopt or accept the writing. . . . Under

the broad definition of signature and the accompanying official comment, the stamp . . . constitutes a signature.[7]

"The stamp therefore was an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances *unambiguously indicate* that the signature was made for a purpose other than indorsement. . . . With no unambiguous evidence indicating the signature was made for any other purpose, the stamp was an indorsement that transferred the [n]ote . . . ." (Citations omitted; emphasis in original; footnote added; internal quotation marks omitted.) Id., 469–70. The court then explained that the borrower failed to offer evidence demonstrating the actual possibility of forgery or error on the part of the lender to overcome the presumption in favor of the signature before concluding that the note was properly endorsed and transferred. Id., 470–71.

We find the analysis of the North Carolina Supreme Court in *In re Bass* to be persuasive. Although we recognize that the argument presented by the defendant in the present case—that the individual whose name the signature bears lacked the authority to make the endorsement—is more nuanced than that presented by the borrower in *In re Bass*, we are not persuaded that such distinction affects the analysis. The dispositive consideration in both cases is the same, namely, whether the *entity* applying the stamp to the instrument intended that the stamp constitute a signature for the purposes of endorsing and negotiating the instrument.

In the present case, the defendant does not dispute that the endorsement stamp was placed on the note by someone at Washington Mutual. In fact, the stamp specifically states: "Pay to the order of [blank] Without Recourse WASHINGTON MUTUAL BANK, FA." Pursuant to the broad definition of signature set forth in § 42a-3-401 (b), Washington Mutual could have used any mark to manifest its intent to create an endorsement through a signature. The name of a former employee certainly falls within the category of "any name, including a trade or assumed name, or by a word, mark, or symbol . . . ." General Statutes § 42a-3-401 (b). The fact that Washington Mutual chose to use a stamp bearing the signature of a former employee is of no import to the analysis pursuant to § 42a-3-401, which pertains to a bank's rights and obligations related to the note, rather than those of a former employee. Any argument regarding Riley's lack of authority to make the endorsement is misguided because it was *Washington Mutual* that endorsed the note, and there is no evidence in the record to suggest that it did not have the "present intention to authenticate [the] writing." General Statutes § 42a-3-401 (b). Furthermore, Washington Mutual's intent for the signature to serve as an endorsement and for JPMorgan to acquire the rights to enforce the note

is evidenced by the assignment of the mortgage to JPMorgan, the sworn affidavit, and JPMorgan's possession of the original note. See *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709–10, 41 A.3d 1077 (2012).[8]

We conclude that the stamped signature on the note meets the signature requirements for negotiable instruments set forth in § 42a-3-401 (b). Pursuant to § 42a-3-204, the stamp constitutes an endorsement, as it is a signature made for the purpose of negotiating the instrument. Because the endorsement did not identify a person to whom it makes the instrument payable, the note was endorsed in blank, making it payable to the bearer. Thus, JPMorgan, which was in possession of the original note, was entitled to the presumption that it is the owner of the debt evidenced by the note with the right to enforce it.

The defendant failed to offer any evidence to rebut this presumption. To raise a genuine issue of material fact as to a plaintiff's standing, a defendant must present some evidence that another party is the owner of the note and debt. See *Bank of America, N.A.* v. *Kydes*, 183 Conn. App. 479, 489, 193 A.3d 110 ("[b]ecause [the plaintiff] duly alleged that it possessed the note at the time it commenced this action, it was entitled to rely upon that allegation unless the defendant presented facts to the contrary"), cert. denied, 330 Conn. 925, 194 A.3d 291 (2018); see also *JPMorgan Chase Bank National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 146, 126 A.3d 1098 (2015) ("The defending party does not carry its burden [of proving that the holder of the note is not the owner of the debt] by merely identifying some documentary lacuna in the chain of title that *might* give rise to the possibility that a party other than the foreclosing party owns the debt. . . . To rebut the presumption . . . the defending party must prove that another party is the owner of the note and debt." [Citation omitted; emphasis in original.]), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016).

The defendant failed to present any evidence to create a genuine issue of material fact that someone other than JPMorgan and the subsequent plaintiffs was the owner of the note and debt. As the bearer of the note at the time this action was commenced, JPMorgan was the holder of the note and presumed owner of the debt and had the right to foreclose the mortgage. This right to foreclose was transferred to the substitute plaintiff upon negotiation of the note by JPMorgan, and, in the absence of any meritorious special defenses, Christiana Trust established its prima facie case to warrant summary judgment as to liability.

## II

We next address the defendant's claim that the trial court erred in adjudicating the special defenses that

related to damages at the summary judgment stage for liability only. The defendant's first special defense asserts, in pertinent part, the nonapplication or misapplication of payments and an incorrect computation of debt by Christiana Trust. The third special defense asserts, in pertinent part, that "the note was previously paid in full to a prior holder, or, [Christiana Trust] has received payments sufficient to pay off the entire alleged outstanding balance."

In its memorandum of decision, the court held: "The defendant has offered no evidence that would conceivably support her first and third special defenses related to payment. Thus, the first and third special defenses raise no genuine issue of material fact that could defeat the present motion." On appeal, the defendant challenges what she characterizes as the trial court's rejection of these two special defenses. She argues in her brief: "[Christiana Trust] was seeking summary judgment on liability only. These special defenses should remain, inasmuch as they may be raised relating to the damages portion of [Christiana Trust's] claims." Wilmington argues that the defendant's "[defense] of payment was inadequate to affect summary judgment . . . . Neither of these defenses can assist [the] defendant as she failed to present a defense as to the amount of debt." (Internal quotation marks omitted.) We agree with Wilmington.

Payment, such that a debt is no longer owed to a plaintiff, is a valid defense to liability in a foreclosure action. See, e.g., *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 289, 857 A.2d 366 (2004). By contrast, a defense as to the amount of the debt, which becomes applicable only after liability has been determined, involves a defendant's challenge to a plaintiff's claim as to the amount of the mortgage debt that remains due. "In a mortgage foreclosure action, a defense to the amount of the debt must be based on some articulated legal reason or fact." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Chainani*, 174 Conn. App. 476, 486, 166 A.3d 670 (2017).

By the defendant's own characterization, the first and third special defenses pertain to the issue of damages and not liability.[9] The defendant seems to assume that, in making its summary judgment ruling as to liability, the court disposed of the first and third special defenses entirely, such that they were no longer viable for purposes of contesting the amount due to Wilmington when the court considered whether to render a judgment of strict foreclosure. This is a misunderstanding of the court's ruling. The court's determination that the special defenses failed to defeat summary judgment was isolated to the issue of liability. In our review of the memorandum of decision, we find no indication that the court disposed of the special defenses for purposes of challenging the amount of debt before rendering a judgment

of strict foreclosure. "[T]he strict foreclosure hearing establishes the amount of the debt owed by the defendant." *TD Bank, N.A.* v. *Doran*, 162 Conn. App. 460, 468, 131 A.3d 288 (2016). Yet, at the hearing on the motion for judgment of strict foreclosure, the defendant failed to raise these special defenses or make any challenges to the submission of the amount of debt owed. Because the defendant failed to present a defense as to the amount of debt at the strict foreclosure hearing, she cannot now attempt to use her challenge to the court's decision granting summary judgment on liability as a vehicle to resurrect the special defenses that she failed to raise during the judgment phase.

### III

Lastly, the defendant claims that the trial court erred when it struck the fourth count of her amended counterclaim. Specifically, she argues that the court incorrectly determined that the count of the counterclaim that sought attorney's fees pursuant to General Statutes § 42-150bb[10] did not meet the transaction test set forth in Practice Book § 10-10. This claim is without merit.

The defendant's claim that the court "struck" her fourth count mischaracterizes the record. The court was not asked to strike the fourth count,[11] and the language in the court's memorandum of decision contains no indication that it struck that count. In its memorandum of decision, the court highlighted the "bizarre" nature of the fourth count, in which the defendant claimed that she was entitled to attorney's fees for defending this action. The court held that, even if such a right to attorney's fees existed, the count violated the transaction test set forth in Practice Book § 10-10, as "it has no reasonable nexus to the making, validity or enforcement of the mortgage or note, and is therefore legally insufficient as a counterclaim."[12] It concluded its analysis by stating: "As counterclaim count four violates the transaction test set forth in . . . § 10-10 because it does not arise out of the same transaction as the complaint, this court is *not precluded from granting summary judgment* to [the] plaintiff." (Emphasis added.) Thus, the court did not strike the fourth count of the counterclaim as argued by the defendant, but, instead, properly analyzed the merits of the count and its potential effects on Christiana Trust's prima facie case of liability, ultimately concluding that it was insufficient to preclude the granting of summary judgment as to liability. Furthermore, on appeal, the defendant fails to address how the count seeking attorney's fees for a successful defense of the action—which could not occur unless the court rendered judgment for the defendant, which it did not do—could possibly affect the court's finding as to liability. Instead, her brief focuses entirely on how the count met the transaction test, an argument that is entirely irrelevant to the court's resolution of Christiana Trust's motion for summary

judgment as to liability.[13]

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Sonia Syed is also known as Sonia Haque. Also named as defendants in the complaint were JPMorgan Chase Bank, National Association, as attorney in fact for the Federal Deposit Insurance Corporation, as receiver for Washington Mutual Bank, formerly known as Washington Mutual Bank, FA; Citibank (South Dakota), N.A.; and state of Connecticut, Department of Revenue Services. The only defendant relevant to this appeal, however, is Sonia Syed, whom we refer to as the defendant.

[2] The May 2, 2018 motion to substitute contained as exhibits a September 5, 2017 assignment of mortgage from Christiana Trust to Series 1 of Normandy Mortgage Depositor Company, LLC (Series 1), which was filed on the Glastonbury land records on October 31, 2017, and another assignment of mortgage, executed on September 9, 2017, from Series 1 to Wilmington, which also was filed on the Glastonbury land records on October 31, 2017.

[3] The defendant also notes that "[t]he week before judgment of strict foreclosure [was] entered, [Christiana Trust] filed a motion to have Wilmington substituted in as [the] plaintiff. The documents filed with the motion to substitute [however] reflect that possession or ownership changed while summary judgment was pending, nearly one year prior, after summary judgment [was] filed, before oral argument and before decision. The [defendant] objected as [to] the substitution of Wilmington, as the dates of the assignment further undercut that [Christiana Trust] was really the holder or the party entitled to enforce the note . . . ." According to the defendant, "[t]he later filed motion to substitute is further evidence of the [plaintiff's] chicanery." Other than setting forth the underlying facts and making bald assertions as to their significance, the defendant offers no legal analysis or any authority supporting her argument. Thus, to the extent that the defendant offers this argument as a separate ground for reversing the court's judgment, we decline to review it as inadequately briefed. See *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 439, 190 A.3d 105 (this court need not address issues that are inadequately briefed), cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018). Nevertheless, we do note that the law is quite clear that an assignee of a mortgage is entitled to pursue a previously instituted foreclosure action in the name of the assignor and does not need to be substituted formally as a party to the action. See, e.g., *Citibank, N.A.* v. *Stein*, 186 Conn. App. 224, 244, 199 A.3d 57 (2018), cert. denied, 331 Conn. 903, 202 A.3d 373 (2019); *Dime Savings Bank of Wallingford* v. *Arpaia*, 55 Conn. App. 180, 184, 738 A.2d 715 (1999).

[4] In her objection to the motion for summary judgment, the defendant included excerpts of a deposition of Riley from an unrelated case in another jurisdiction, in which she admitted to never signing any endorsements, that there were multiple stamps with her name and signature, and that her staff used them to endorse notes. She also stated that she left the department in November, 2006, which precedes the date of the subject note.

[5] General States § 42a-3-201 (a) defines " '[n]egotiation' " as "a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder."

[6] We note that the difference in spelling of "endorse" and "indorse" is a distinction without significance; the terms have the same meaning. See Black's Law Dictionary (11th Ed. 2019) p. 925 (defining "indorse" to mean: "To sign (a negotiable instrument) . . . either to accept responsibility for paying an obligation memorialized by the instrument or to make the instrument payable to someone other than the payee. —Also spelled *endorse*.") Because the General Statutes use "endorse," we have adopted that spelling throughout this opinion except where we quote from sources that have adopted the alternative spelling.

[7] North Carolina's Commercial Code defines " '[s]igned' " as "any symbol executed or adopted with present intention to adopt or accept a writing." N.C. Gen. Stat. Ann. § 25-1-201 (b) (37) (West 2011).

[8] The plaintiff alternatively argues that any potential " 'issues' " with the signature itself should not affect its standing as a holder of the note because, even if the note lacked an endorsement entirely, the plaintiff would still have the right to enforce the note. See *Ulster Savings Bank* v. *28 Brynwood Lane, Ltd.*, 134 Conn. App. 699, 709–10, 41 A.3d 1077 (2012). We find no need to address this argument because we conclude that there was a

valid endorsement.

[9] The allegations in the first special defense make it apparent that the defendant is challenging the amount of debt, namely, the application of payments and charges to the balance of the alleged debt. As alleged, however, the third special defense is less clear, as some of the allegations could be interpreted as challenging either liability or the amount of debt. To the extent that the defendant is arguing that she is released from liability because the debt is no longer owed to the plaintiff ("the note was previously paid in full to a prior holder, or, [the] plaintiff has received payments sufficient to pay off the entire alleged outstanding balance"), she would be asserting a payment defense. The defendant, however, "must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . In other words, [d]emonstrating a genuine issue of material fact requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred." (Citations omitted; internal quotation marks omitted.) *Bank of New York Mellon* v. *Horsey*, supra 182 Conn. App. 436. Because the defendant failed to offer evidence beyond the allegations in the special defenses to establish a genuine issue of material fact, her special defense of payment is insufficient to preclude summary judgment on the issue of liability.

[10] General Statutes § 42-150bb, a consumer protection law, provides in relevant part: "Whenever any contract . . . to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease. . . . For the purposes of this section, 'commercial party' means the seller, creditor, lessor or assignee of any of them, and 'consumer' means the buyer, debtor, lessee or personal representative of any of them. The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes."

[11] In its motion for summary judgment, the plaintiff did not request that the court strike or dismiss the defendant's counterclaim. Cf. *Bank of New York Mellon* v. *Mauro*, 177 Conn. App. 295, 316–17, 172 A.3d 303 (portion of plaintiff's motion for summary judgment treated as motion to strike where plaintiff sought *dismissal* of defendant's counterclaims), cert. denied, 327 Conn. 986, 175 A.3d 45 (2017). Instead, the plaintiff submitted that "the counterclaims do not directly contest the validity of the security instrument itself and, therefore [are] collateral and not part of the same underlying transaction from which the complaint originated. As such, the plaintiff respectfully submits that its motion for summary judgment should be granted notwithstanding the counterclaims."

[12] Practice Book § 10-10 provides in relevant part: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ."

[13] The defendant's argument regarding the counterclaim is recited here in full: "The court incorrectly determined that the defendant's counterclaim for attorney's fees under . . . § 42-150bb did not meet the transaction test. The claim meets the transaction test as a successful defense of the action by the defendant would entitle the defendant to fees under the statute. This claim has a reasonable nexus to the enforcement of the note and mortgage, if the plaintiff fails in its prosecution of the foreclosure action, the defendant is entitled to attorney's fees. . . . Also, the counterclaim meets the transaction test as it has a reasonable nexus to the validity of mortgage as the terms of the mortgage require compliance with the law, and, under . . . § 42-150bb, a Connecticut consumer protection law, a successful defense of the foreclosure action will result in the plaintiff being required to pay fees." (Citation omitted.)